John TARKINGTON v. STATE of Arkansas

CR 92-1134                                    855 S.W.2d 306

Supreme Court of Arkansas
Opinion delivered June 7, 1993

*John Wesley Hall, Jr., P.C.*, by: *Craig Lambert*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, John Tarkington, was convicted of aggravated robbery and sentenced as a habitual offender to life in prison. On appeal he argues the trial court erred by not instructing the jury on the lesser included offenses of robbery and aggravated assault. He also argues the trial court erred in denying his two motions for a mistrial.

On February 23, 1991, about 10:30 p.m., Johnna Morley closed her store, Country Convenience Store. She got into her mini-van and began to drive away, but stopped under a nearby floodlight because she saw a black Camaro, which was parked next door and which had driven by the store earlier, start its engine and turn on its lights when she drove past. Ms. Morley testified she wanted to see if the Camaro was going to her store because her door had recently been smashed. When Ms. Morley stopped under the floodlight and turned to look at her store, appellant jumped up from the seat behind her and held a knife to her throat. Ms. Morley described the knife as a hunting knife with a 3.5 to 4-inch blade and a shiny, bright orange handle. Appellant demanded money, but Ms. Morley did not have any with her. Appellant then ordered Ms. Morley to return to the store, where he continued to hold the knife to her throat as they got out of the van and entered the store. Appellant continued to hold the knife on Ms. Morley while he had her open the store safe and put the money bags on the floor. Appellant took the money bags and put them in a grocery bag, he then took Ms. Morley into the office and told her not to call the police and left. Ms. Morley called the police and told them what had happened. The police began to look for a

dark Camaro. Shortly thereafter, a black Camaro in which appellant was a passenger was spotted by the police. As the police attempted to stop the car, appellant threw the money bags taken from the convenience store out of the car window. When the car did stop, appellant was taken out of the car. During a pat down search, a knife was found in and removed from appellant's pocket. Ms. Morley identified the knife as the one used in the robbery.

Appellant testified on his own behalf at trial. His testimony was that he had taken some Xanax and drunk beer on the day of the robbery and did not recall anything that happened that night until his car, in which he was a passenger at the time, was stopped by the police. He also testified that he had owned the knife in question at one time, but had given it to his son who had left it in the car. He testified that he did not normally carry a knife and had not been carrying the knife that evening, but later said he could not contradict what any of the other witnesses had said because he could not remember and that the knife wasn't in his pocket that he knew of.

We first address appellant's arguments regarding the trial court's refusal to instruct the jury on the lesser included offenses of robbery and aggravated assault. A person commits robbery when "with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another." Ark. Code Ann. § 5-12-102(a) (Supp. 1991). A person commits aggravated robbery when he commits robbery and "[i]s armed with a deadly weapon or represents by word or conduct that he is so armed; or [i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark. Code Ann. § 5-12-103(a) (1987). A person commits aggravated assault when "under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person." Ark. Code Ann. § 5-13-204(a) (1987).

At trial, the victim testified that appellant held a knife on her and forced her to open the safe at the convenience store where she worked and hand him the money from inside. Officer Hardy testified that the knife was removed from appellant's pocket by Officer Lopez after the car he was in was stopped. Appellant

testified on his own behalf at trial. However, he offered no proof to contradict the state's case. Appellant's testimony was essentially that he did not remember anything about the time period in question and that he could not dispute what the witnesses against him said.

■ Given that there was no proof presented that appellant did not have a weapon during the robbery, it was not error for the trial court to refuse to instruct on the lesser included offenses of robbery and aggravated assault. *Smith* v. *State*, 277 Ark. 403, 642 S.W.2d 299 (1982). "The trial court is not obligated to charge the jury with respect to a lesser included offense when there is no rational basis for the jury to find appellant guilty of a lesser included offense." (Citations omitted.) *Id.* at 405, 642 S.W.2d at 301; Ark. Code Ann. § 5-1-110(c) (1987).

■ For his second point on appeal, appellant contends the trial court erred when it denied his two motions for a mistrial. Appellant contends two statements made by Officer John Surrette and Investigator James Hardy during their testimony were improper comments on appellant's silence and amount to *Doyle* violations which require our reversal. *Doyle* v. *Ohio*, 426 U.S. 610 (1976). In *Doyle*, the United States Supreme Court held that "the Due Process Clause bars '*the use* for impeachment purposes' of a defendant's postarrest silence." *Greer* v. *Miller*, 483 U.S. 756, 763 (1987).

■ The first comment to which appellant asked for a mistrial occurred during the following questioning of Officer John Surrette by the prosecutor:

Prosecutor: And, you were—you were involved in the transportation of Mr. Tarkington to the Pope County Detention Center?

Officer Surrette: Yes, I was.

Prosecutor: All right. And, did you transport him in your patrol car?

Officer Surrette: Yes, I did.

Prosecutor: Was there any incident or anything unusual that happened on the way or was it routine?

Officer Surrette: Just routine. He didn't make any statements to me whatsoever.

Defense Counsel: Your Honor, may we approach the Bench?

The Court: Yes, sir.

(Side-Bar Conference, outside the hearing of the Jury)

Defense Counsel: Your Honor, it is his absolute right not to make any statements. That's—I move for a mistrial. You know, he's—you're not suppose to be bringing that out that he didn't make statements. That carries the implication that he's—he's doing something wrong by not making statements.

Prosecutor: He's just saying he didn't say anything is all he said.

The Court: Well, I'm not going to grant a mistrial; but—

Prosecutor: He just came out with it. I just asked him if there was anything unusual or if it was fairly routine.

The Court: The response wasn't really responsive to his question.

Defense Counsel: I would ask you to caution the Jury that—

The Court: Well, I'd rather not draw attention to it.

Prosecutor: That would be the same effect as if he said he had sit [sic] in silence.

Defense Counsel: Well, it's his right to remain silent.

Prosecutor: Well, nobody disputes that. That's just part of the fact.

Defense Counsel: All right.

(End of Side-Bar)

This is similar to what occurred in *McIntosh* v. *State*, 296 Ark. 167, 753 S.W.2d 273 (1988), *cert. denied*, 489 U.S. 1065 (1989).

In *McIntosh,* we held no *Doyle* violation occurred when a police officer included as part of his answer to the prosecutor's questions about his interview of appellants that "all three made no comment." In doing so, we relied on *Greer* v. *Miller,* 483 U.S. 756 (1987) in which the United States Supreme Court found no *Doyle* violation occurred when a prosecutor asked appellant on cross-examination why he didn't tell his story about the events surrounding a murder when he was arrested since the trial court sustained an objection to the question, the jury was instructed to ignore the question, and the prosecutor did not pursue the issue further or mention it during his closing argument. In *McIntosh* , we stated as follows:

> The error in the present case is even less apparent than the one made in *Greer.* Here it was not the prosecutor who referred to the appellants' silence but a police officer who gave an unsolicited response. The trial judge did not allow nor did the prosecutor attempt to use the appellants' silence for impeachment purposes or call attention to their silence.

*McIntosh,* 296 Ark. at 173, 753 S.W.2d at 276 (citation omitted). The same situation occurred in this case. There was not a comment or question by the prosecutor regarding appellant's postarrest silence. There was merely an inadvertent comment by a witness which was nonresponsive to the prosecutor's question. Additionally, the prosecutor did not comment on appellant's postarrest silence in his argument to the jury. As such, this statement does not amount to a *Doyle* violation. *Greer,* 483 U.S. 756.

The second incident which appellant contends was an improper comment on his silence occurred during the questioning of Investigator Hardy by appellant's counsel. The following occurred:

> Defense Counsel: Okay. Now, had you seen [appellant] the night that this crime occurred?
>
> Investigator Hardy: Yes, sir. I attempted to interview him.
>
> Defense Counsel: Your Honor, may we approach the Bench?

The Court: Yes, sir.

(Side-Bar Conference, outside the hearing of the Jury)

Defense Counsel: I again—the same thing that came up yesterday; and I move for a mistrial again. He's got the right to remain silent.

The Court: He's not commenting on his right.

Defense Counsel: He said he attempted to interview him.

Prosecutor: He just responded to his question.

Defense Counsel: Well, I didn't ask him if he interviewed him. I asked him if he saw him.

Prosecutor: He was answering your question that you asked.

The Court: It was responsive. It may not have been the answer you wanted to hear; but it was responsive.

Defense Counsel: Well, I move for a mistrial.

The Court: I'll deny that.

Defense Counsel: Okay; and I'll ask for a cautionary instruction that he has the right to remain silent.

Prosecutor: I don't believe that would be called for.

The Court: Well, I don't think he started a questioning and answering session with [appellant].

Defense Counsel: He said he attempted to interview him.

Prosecutor: He didn't say whether he gave the statement or did not.

Defense Counsel: Well, I think there's enough there to create an implication against my client that he did something wrong by not cooperating with him.

Prosecutor: He didn't say he—

Defense Counsel: He said he attempted to interview

him.

The Court: Well, I can tell the Jury that a person accused has a constitutional right not to give a statement. He has the right to remain silent.

Defense Counsel: I ask for that. I think I have to; but I first ask for a mistrial.

The Court: I've denied that; but if you wish to have a cautionary instruction, I'll do that.

Defense Counsel: Yes, sir. Okay.

(End of Side-Bar)

The Court: Ladies and Gentlemen, Mr. Hardy had indicated that—I believe in response to a question that he attempted to interview [appellant]. An accused has a constitutional right not to testify. In other words, he can remain silent. The fact that a person exercises that right is not to be considered by you in determining his guilt or innocence in this case.

Once again, this was not questioning or comments by the prosecutor on a defendant's silence which would constitute a *Doyle* violation. *Greer*, 483 U.S. 756. The statement objected to occurred during cross-examination by appellant's own counsel. In addition, the jury was instructed as appellant requested that an accused has the right to remain silent and that the exercise of this right should not be used in determining guilt or innocence.

As required by Ark. Sup. Ct. R. 4-3(h), we have reviewed all abstracted rulings adverse to appellant as well as the points raised on appeal. We find no error.

Affirmed.