Ricky Lee FRANKLIN *v.* STATE of Arkansas

CR 94-407                                        884 S.W.2d 246

Supreme Court of Arkansas
Opinion delivered September 26, 1994

*C.P. Christian*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Ricky Lee Franklin appeals from a judgment of conviction for two counts of burglary. He was sentenced to forty years imprisonment. He raises two points on appeal: (1) an insufficient foundation was laid by the State for the admission of two pieces of physical evidence; and (2) the evidence was insufficient to corroborate the testimony of an accomplice in that it failed to independently connect Franklin with the crimes. The points are meritless, and we affirm.

On July 22, 1991, Franklin was charged with committing thirteen burglaries in Lonoke County. The thirteen crimes occurred in Cabot, and two concerned burglaries of a convenience store

named Pony Express #4 and a business named River City Gymnastics. The two charges read that the defendant "during a time period from June 27-28, 1991, in Lonoke County, Arkansas did unlawfully" enter Pony Express #4 and River City Gymnastics for the purpose of committing a felony.

On December 16, 1992, Franklin was tried for the two burglaries. At the trial, the State called Jimmy Doyle Mayfield as its first witness. Mayfield testified that he, Franklin, and a third man named Carl Radar committed several burglaries in Cabot during the summer of 1991. Mayfield first described breaking into a convenience store. He testified that Franklin took the glass door out of its frame, and Mayfield went in and took money out of the cash register. Mayfield and Franklin then located a safe in the store, took it outside, pried it open, took some money out of it, and left it behind a dumpster.

Following the convenience store burglary, Mayfield testified that the three men entered a gymnastics store by using a screwdriver to force open the front door. They got some money out of a coke machine and next found a swimsuit which they cut up and converted into a ski mask. The State moved to introduce the makeshift ski mask into evidence as State's Exhibit 1, and defense counsel objected on grounds of lack of a proper foundation. Specifically, defense counsel contended that Mayfield had failed to pinpoint the dates of the burglaries and that mere testimony that they occurred during the summer of 1991 was not sufficient to put Franklin on notice to prepare a defense. The trial court overruled the objection.

Mayfield further testified that the three men used a police scanner belonging to Franklin in the burglaries. Mayfield identified that police scanner at trial, and the State moved its introduction as State's Exhibit 2. Defense counsel objected on the same grounds of lack of proper foundation, and the trial court, again, overruled that objection.

The State next called Lieutenant Sherman Malcomb of the Cabot Police Department, who investigated the two burglaries on the morning of June 28, 1991. He related that at Pony Express #4 the solid glass door had been removed to gain entry. Inside the store, the burglars had opened the cash register and also

removed a safe which was found pried open and left beside a dumpster behind a hardware store. At River City Gymnastics, he stated that the front door had been pried open, and leotards, swimsuits, and other gymnastic clothing were taken.

Jerri Tollett, the owner of River City Gymnastics, testified that some $300 to $500 worth of gymnastic clothing was stolen from her store. She also identified State's Exhibit 1, the converted swimsuit, as an item carried in her store which had to be specially ordered from out of state.

For its last witness, the State called Detective Mark Baugh of the Heber Springs Police Department. Detective Baugh told the jury that he had confronted Franklin, Mayfield, and Radar on July 2, 1991, leaving room 20 of the Arkansas Inn in Heber Springs and had found the converted swimsuit and police scanner, State's Exhibits 1 and 2, in the ceiling of that room.

The State then rested and defense counsel moved for a directed verdict which was denied. After the defense rested, the motion was renewed but again denied.

The jury was then instructed on the applicable law, but the abstract of record reflects that no instruction on accomplice testimony and the need for corroborating evidence (AMCI 402[1]) was given to the jury or even offered by the defense. The jury returned a verdict of guilty on the two counts, and the forty-year sentence was imposed.

For his first point, Franklin urges that the State was not specific enough with its dates in laying a foundation for the introduction of the swimsuit which was converted into a ski mask and the police scanner, State's Exhibits 1 and 2. The argument pertains to Jimmy Mayfield's testimony that the burglaries occurred during the summer of 1991. Franklin argues that this testimony is not sufficiently precise to enable him to fashion a defense. We disagree.

■ The information filed in this case was very exact as to when the two burglaries occurred — June 27-28, 1991. Thus, from the outset Franklin knew the timeframe in question and was

---

[1]The new model criminal instruction, published in 1994, is AMCI 2d 402.

also privy to Cabot police information, including the affidavit for arrest warrant, which specified the date of the crimes as "the night time hours of 27/28 June 1991." The testimony of Jimmy Mayfield, though less precise, was certainly not at odds with the dates in the criminal information or in the affidavit for arrest. Moreover, Franklin knew that Detective Baugh confronted both Mayfield and him in Heber Springs on July 2, 1991, and found the cut-out swimsuit and the police scanner. By necessity, Franklin knew that the crimes involved had to have occurred before then.

■ The issue before us is not, as Franklin suggests, one where a discrepancy existed between the dates in the charging information and testimony at trial. *See, e.g., Lewis* v. *State,* 309 Ark. 392, 831 S.W.2d 145 (1992); *Payne* v. *State,* 224 Ark. 309, 272 S.W.2d 829 (1954). Here, the criminal information and Mayfield's testimony can easily be harmonized. The trial court correctly refused to give this argument any credence.

■ For his second point, Franklin contends that there was insufficient evidence to corroborate the testimony of Jimmy Mayfield, an accomplice. Franklin is right that when accomplice testimony is involved, statutory law requires that there be other corroborative evidence "tending to connect the defendant with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1) (1987). Franklin urges that in his case there was none.

■■ We decline to consider this issue. There is nothing in Franklin's abstract of the record which shows that this issue was ever raised to the trial court. No motion or argument by defense counsel is presented in the abstract. Nor do we have before us a ruling by the trial court on whether Mayfield was an accomplice as a matter of law or a proffered instruction to the jury on the necessity for corroborative evidence. Our Supreme Court Rules make it abundantly clear that it is incumbent upon the appellant to abstract the material parts of the record for our review. Ark. Sup. Ct. R. 4-2(a)(6). The reason is basic. There are seven justices on this court and only one record. When an abstract is so deficient that we are unable to discern what happened in the trial court, we will affirm. As we have said many times, we will not scour the single record searching for prejudicial error, except in death or life imprisonment cases where a motion, objection, or request on the point at issue was made

before the trial court. *Watson* v. *State*, 313 Ark. 304, 854 S.W.2d 332 (1993); *Kitchen* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980).

■ ■ In this regard, we are aware that the State in the Argument portion of its brief alluded to a motion by Franklin for a directed verdict and his contention that Mayfield's testimony was not independently corroborated. Even though the State appears to have conceded that Franklin raised lack of corroborative evidence as part of his motion for directed verdict, we are not prepared to say that references in the State's Argument to what transpired at trial equate to an abstract of the record. But even if we were, this issue is still not preserved for our review. Franklin failed to abstract any ruling from the trial court that Mayfield was an accomplice as a matter of law and that corroborative evidence was required. In addition, he neglected to include in his abstract any reference to a proffered instruction on accomplice testimony and corroborative evidence which would have enabled the jury to decide the issue. Because of these circumstances, we conclude that his abstract is flagrantly deficient, and our cases foreclose a review of this point. *See, e.g., Watson* v. *State, supra.*

Affirmed.