Robert Lovell BROWN *v.* STATE of Arkansas

CR 97-1236                                    970 S.W.2d 287

Supreme Court of Arkansas
Opinion delivered June 25, 1998
[Petition for rehearing denied September 10, 1998.]

*John I. Purtle,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This case raises the sole issue of whether appellant Robert Lovell Brown was denied a fair trial because the jury deliberated for such a brief period of time following his trial for capital murder. Because

On September 30, 1996, Brown was charged with capital murder for the shooting death of James Allen. On January 10, 1997, he was tried on that charge before a jury. The facts that developed at trial are these. On June 23, 1996, at approximately 9:30 p.m., Tanya Jordan, a twenty-three-year-old college student, witnessed a Toyota Camry drive slowly up the Little Rock street

by her house. According to Jordan, the car sped off when the occupants saw her. Within five minutes, she heard gunshots and again saw the Toyota Camry, but this time, Brown, the driver, was hanging out the window with a gun in his hand. She testified that Brown again sped off but that she ran to the street to identify the Camry's license-plate number. At that time, she discovered the victim, James Allen, who was critically wounded and lying in a ditch between her house and the street.

Ronnie Smith, a homicide investigator with the Little Rock Police Department, testified that a Ruger Model P-90 .45 caliber semi-automatic pistol was turned over to the Department as the potential murder weapon by Brown's girlfriend, Sally Davic, who owned the Toyota Camry. Ron Andrejack, a firearms toolmark examiner with the State Crime Lab, testified that the two full-metal jacketed bullets that were removed from Allen's body, as well as four shell casings that were retrieved from the crime scene, were fired from the same Ruger pistol. Brown also stipulated to the fact that the bullets removed from Allen's body were fired from the Ruger pistol.

Calvin Oliver, who had known Brown for approximately ten years, testified that he was sitting in the back seat of the Camry on the passenger side when the shooting occurred. He explained that Brown drove his cousin, Shawn, and him around the block twice and that Brown shot Allen the second time around. He stated that Brown crossed the road to the opposite side of the street, where Allen was walking, and that he stopped the vehicle and shot six or seven times. Oliver testified that he did not see anything in Allen's hands and that he never saw Allen make any sudden movements. Oliver testified that Brown and he were in the South Side gang and that Allen was in the West Side gang. Oliver explained that it was known that a friend of theirs had been killed a couple of months earlier by a member of the West Side gang.

Chantelle Bequette, a criminalist in the trace evidence section of the State Crime Lab testified that she examined the white tee-shirt worn by Allen at the time he was shot and stated that there was a smoke stain around the hole in the back of the shirt.

As a result, she opined that Allen was shot in the back at close range.

Brown next testified in his own defense. He briefly explained that Allen had threatened him and cursed him. Allen then, according to Brown, "approached my car and he went in the front of his pants like he was fixing to pull a weapon on me, a gun, a pistol, and I shot him." He testified that approximately one year earlier, Allen had pulled a pistol on him to rob him, and he stated that he believed Allen to be a dangerous person. He testified that he tried to avoid Allen the first time by driving away, and he denied that the killing was motivated by revenge. He testified that Allen approached his car "acting crazy," and he admitted that he took the pistol from the console and fired three or four times.

After the close of the evidence, the jury left the courtroom and returned ten minutes later with a verdict of guilty. Brown was sentenced to life in prison without parole. No objection or motion was made by Brown at the time of sentencing concerning the brief span of the jury's deliberation time.

The Judgment and Commitment Order was entered on March 20, 1997. Prior to that date, Brown filed a motion for judgment notwithstanding the verdict on February 18, 1997, and a motion for a new trial on March 10, 1997. Both motions raised the issue that the jury only deliberated for an impermissibly short period of time. A hearing was held on the two motions on April 1, 1997, and the trial court denied them. No order denying the motions appears in the record. On April 16, 1997, Brown filed a notice of appeal from the judgment.

■ Though the State fails to make this argument, it is clear to us that the issue of an abbreviated jury deliberation is not preserved for our review. As an initial matter, both the posttrial motions in this matter were ineffective because they were filed before the judgment was entered in this case. *See Hicks v. State,* 324 Ark. 450, 921 S.W.2d 604 (1996) (per curiam); *Webster v. State,* 320 Ark. 393, 896 S.W.2d 890 (1995) (per curiam). Because the motions are void, we treat them as if they had never been made. In addition, there was no order entered denying the

motions, and Brown, according to his notice of appeal, appealed only from the judgment.

When the jury returned its verdict, no motion or objection was made at that time about the brevity of deliberations. The jury was then dismissed. The issue of an impermissibly brief deliberation period was not raised until the posttrial motions which we have already concluded were void and ineffective. The practical effect on these procedural lapses is that the issue now raised in this appeal is being raised for the first time on appeal and is not preserved for our review. *See, e.g., Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998); *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997).

Affirmed.

Shirley MATTHEWS *v.* STATE of Arkansas

CR 97-267                                                          970 S.W.2d 289

Supreme Court of Arkansas
Opinion delivered June 25, 1998
[Petition for rehearing denied October 15, 1998.]

*Jeff Rosenzweig,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Asst. Att'y Gen., for appellee.

PER CURIAM. The appellant, Shirley Matthews, was convicted of arson, conspiracy to commit arson, and attempted theft of property. The conspiracy conviction was subsequently vacated by the trial court. Matthews was sentenced to a twenty-year prison term on the arson conviction and a six-year prison term on the attempted theft of property conviction. The Court of Appeals affirmed the conviction and sentence in *Matthews v. State,* CACR 94-1007 (April 17, 1996). Matthews subsequently filed a timely petition for postconviction relief pursuant to Arkansas Criminal Procedure Rule 37. After a hearing, the Circuit Court filed a written order that denied the petition. Matthews now appeals that order. We affirm.

The allegations in Matthews's petition centered around defense counsel's objection to the introduction of hearsay evidence during the testimony of Matthews's alleged co-conspirator, Peggy Urick. According to Matthews, her attorney objected when the State attempted to elicit the hearsay statements of Matthews's mother, Mildred Gunther. During the objection, the following colloquy ensued:

> DEFENSE COUNSEL: Your Honor, at this point I'm going to object to, and there's been a couple of hearsay statements I'm trying to ignore, but she is making statements about they and this person and that person. I would submit to the court that any statement other than that made by Shirley Matthews would be hearsay and inadmissible.

> THE COURT: Sustained.

> PROSECUTOR: Your Honor, if I might point out and respond to that argument, Shirley Matthews is charged not only

with arson but conspiracy to commit arson, and Mildred Gunter is also named as a co-conspirator and therefore any statements . . .

THE COURT: Oh, well, I didn't realize, she's charged too?

PROSECUTOR: No, Your Honor.

DEFENSE COUNSEL: There was no other co-conspirator charge to my knowledge.

PROSECUTOR: She need not be charged as a co-conspirator, but if Mildred Gunter is a co-conspirator, whether charged or not, any statements made by a co-conspirator are admissible if made during, in preparation for, or in furtherance of the alleged conspiracy. Also, the State alleges that Mildred Gunther was an accomplice to the arson itself, and as an accomplice her statements also may be used. So there would be two bases for the admission of any statements made by both Mildred Gunter and Shirley Matthews.

DEFENSE COUNSEL: Again, Your Honor, there are no co-conspirators named, indicted or charged to my knowledge.

There are no accomplices named, indicted or charged to my knowledge. And to allow hearsay statements by this witness in, there has to be more than this witness' statements in order to allow the hearsay in.

PROSECUTOR: Your Honor, if you want to go back, outside the presence of the jury, you know, I'll give the Court a briefing on the issue, but the Court is well aware that the co-conspirators need not be charged and that is what the law of Arkansas is. The co-conspirators need not be charged in order for a conspiracy to exist and their statements to be admissible.

THE COURT: All right. Since the Court has been informed of the fact that Ms. Gunter is a co-conspirator and an accomplice, your motion, your objection, will be overruled and you will be allowed to pursue this testimony.

In her petition, Matthews alleged that, despite the objection, her counsel was ineffective at this point in her trial. Specifically, she argued that her counsel should not only have objected to the admissibility of Mildred Gunter's statements, but also to the manner in which they were introduced. Matthews suggested that a hearing should have been conducted, outside the presence of the

jury, to determine if there was enough independent evidence of a conspiracy, as required by the applicable Rule of Evidence. According to Matthews, it was error for the trial court to allow the introduction of Mildred Gunter's statements on the prosecutor's word that she was a co-conspirator. Matthews further argued that her attorney should have objected to certain individual statements as not being "in furtherance" of the alleged conspiracy.

The next allegation in Matthews's petition focused on the trial judge's statement at the end of the colloquy: "Since the Court has been informed of the fact that Ms. Gunter is a co-conspirator, and an accomplice, your motion, your objection, will be overruled . . ." Matthews asserts that her counsel should have lodged an objection to the trial court's statement because it amounted to an improper instruction to the jury on a factual issue — that Mildred Gunter was a co-conspirator and accomplice. Additionally, Matthews alleged that the statement also instructed the jury, to some extent, on Gunter's credibility as she later testified for the defense. According to Matthews, the trial judge's statement, "caused the jury to view the State's case as artificially strong, with the judge's improper imprimatur on the allegation of conspiracy. It also caused the jury to look askance at the defense case, since Mildred Gunter had been branded as a conspirator by the prosecutor and judge." Matthews argued further that contemporaneously with the trial judge's statement, her attorney should have sought to have the jury instructed according to AMCI 201, and should have also sought a repudiation of the statement by the trial judge.

In the letter opinion that accompanied the order denying relief, the Circuit Court found that Matthews's counsel was not ineffective for failing to object to the manner in which Mildred Gunter's statements were admitted into evidence. The Circuit Court reviewed the evidence introduced during the trial and found that there was "ample evidence, absent the alleged hearsay statements of Mildred Gunter, . . . to connect Mildred Gunter to the conspiracy." In other words, the existence of other evidence of a conspiracy justified the admission of the hearsay statements, and defense counsel did not perform deficiently by failing to object when the trial judge apparently accepted the prosecutor's

statements alone as indication of a conspiracy. The Circuit Court also ruled that defense counsel was not ineffective for failing to object to statements "not in furtherance of the conspiracy" because the alleged error was harmless.

On appeal, Matthews repeats her arguments concerning her attorney's failure to object to the manner in which the alleged hearsay statements were admitted, as well as his failure to object to the "improper" remarks by the trial judge and those statements that were allegedly not "in furtherance" of the conspiracy, as required by Arkansas Rule of Evidence 801(d)(2)(v). We conclude that Matthews is procedurally barred from raising these arguments on appeal, and therefore, we affirm.

We cannot reach Matthews's arguments concerning her attorney's alleged failure to attack the manner in which the hearsay statements were admitted, as well as his alleged failure to object to the introduction of those statements which were not in furtherance of the conspiracy. We cannot reach the merits of these arguments because Matthews has not abstracted all of the evidence that was introduced during her trial. Rather, she has only abstracted the relevant portions of Peggy Urick's testimony, Mildred Gunter's testimony for the defense, and the jury instructions.

As indicated above, the Circuit Court reviewed the other evidence that was introduced during the trial to conclude that counsel's failure to object to the admission of the statements pursuant to the prosecutor's "word" that a conspiracy existed was not deficient performance. The basis of the Circuit Court's conclusion was the existence of other evidence of a conspiracy that, beyond the prosecutor's statements, justified the admission of Mildred Gunter's statements.

Similarly, the Circuit Court also found that counsel's failure to object to the introduction of those statements that were not in furtherance of the conspiracy was "harmless." We take it that the Circuit Court found that the alleged error did not cause any prejudice to Matthews because there was other evidence that indicated the existence of a conspiracy to commit arson.

■ We do not have an abstract of that evidence before us, and consequently, we cannot review the Circuit Court's rulings on these two issues. A court considering a claim of ineffective assistance of counsel must view it through the perspective of the totality of the evidence put before the jury. *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995). Matthews's failure to abstract the trial testimony so that the totality of the evidence may be viewed precludes appellate review. *Pogue v. State*, 316 Ark. 428, 872 S.W.2d 387 (1994).

Affirmed.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

October 15, 1998

CR 97-267                                       975 S.W.2d 836

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Ass't Att'y Gen., for appellee.