Terrance ROBINSON and Tamagum Antonio Robinson *v.*
STATE of Arkansas

CR 01-351                                         72 S.W.3d 827

Supreme Court of Arkansas
Opinion delivered April 18, 2002

[Petition for rehearing denied May 16, 2002]

*Lewellen & Associates*, by: *Roy C. Lewellen*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Appellants Terrance and Tamagum "Tony" Robinson petition for review of the court of appeals's decision affirming the Robinsons' convictions on unlawful firearm discharge and felon-in-possession charges. This case involves a drive-by shooting. In the late evening of September 21, 1998, Willie and Peggy Gillum pulled into their driveway, when a dark sports car with its lights off stopped on the street by the driveway, and multiple shots were fired from the car at the Gillums. Peggy was uninjured in the shooting, but Willie sustained a gunshot wound to his abdomen. According to the Gillums' testimony at trial, Willie identified the occupants of the car as Ter-

rance and Tony Robinson, who were sitting in the front and back passenger seats, and Marcus Turner, who was driving the car. The Robinson and Gillum families did not get along due to a previous homicide matter in which the Gillums' son, Shawn, was tried and acquitted of the murder of Darrell Robinson in 1997, and to another shooting in which Tony was tried for shooting the Gillums' twenty-year-old son, Broderick, for which Tony was acquitted a week prior to this shooting. There was evidence of great animosity between the families, and evidence that the Robinsons had threatened the Gillums.

Following the shooting and Willie's identification of the shooters, Terrance and Tony were arrested. Terrance was charged with unlawful discharge of a firearm from a motor vehicle and with felon-in-possession of a firearm, and Tony was charged with unlawful discharge of a firearm from a motor vehicle. The case went to trial on April 28 and 29, 1999. Terrance was convicted of both charges and sentenced to twenty-five years for the unlawful discharge of a firearm and six years for the felon-in-possession charge, the terms to run consecutively. Tony was convicted of the unlawful-discharge count and sentenced to eighteen years.

On May 10, 1999, Terrance and Tony filed motions for new trial in which they argued that they deserved a new trial because the State failed to disclose the names and addresses of two witnesses who could provide exculpatory evidence or testimony, because two new witnesses who were previously undiscoverable could provide exculpatory testimony and evidence regarding the shooting, and because the prosecutor engaged in misconduct in introducing a photograph from a rap-music cassette-tape cover with a picture of codefendant, Marcus Turner, whose case was continued, standing in front of a dark sports car.

The trial court entered its judgment and commitment order on May 24, 1999. Following this, it appears that there was some misunderstanding regarding the time frame in which the trial court was required to hear the motion for new trial, and the trial court entered an order on June 10, 1999, extending the time in which it would hold a hearing on the motion for new trial. The trial court held the motion hearing on July 8, 1999, and on that

same day the court orally denied the motion for new trial. The defendants filed their notice of appeal on July 8, 1999, and the trial court entered its written order denying the new trial on July 23, 1999.

█ When we grant a petition for review pursuant to Ark. Sup. Ct. R. 2-4, we treat the appeal as if it were filed in this court originally. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 29 S.W.3d 706 (2000); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

## I.  Motion for Directed Verdict

First, the Robinsons argue that the testimony elicited from Mr. and Mrs. Gillum, with Mr. Gillum identifying the Robinsons as the shooters, was inconsistent and, thus, not credible. In addition, the police investigator testified that the description of the car given at the scene was inconsistent with the car ultimately targeted as the one used in the shooting. The Robinsons argue that these discrepancies, therefore, rendered the jury verdict unreliable, indicating that no reasonable person could find that the State proved its case. The trial court ruled that these were issues of credibility for the jury to determine, and that the jury could find substantial evidence based on the victims' testimony alone.

█ We cannot reach the merits of the Robinsons' argument because this issue is not preserved for appeal. The Robinsons' renewed motion for directed verdict was not made by defense counsel until after the trial court read the jury instructions. Our rule provides that when there has been a trial by jury, a renewal of a previous motion for a directed verdict at the close of all the evidence preserves the issue of insufficient evidence for appeal. Ark. R. Crim. P. 33.1; *see also, Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998); *Hayes v. State*, 312 Ark. 349, 849 S.W.2d 501 (1993). We have previously stated that this renewal is more than a matter of mere form: it goes to the substance of the evidence arrayed against the criminal defendant. *Thomas v. State*, 315 Ark. 504, 868 S.W.2d 483, (1994). However, after the jury has been charged, it is too late to consider a motion to direct a verdict. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

We have held that a trial court's decision to consider and then deny a motion for a directed verdict made after the jury had been instructed, but before closing arguments, did not comply with the rule requiring that the motion be renewed at the close of the case and was therefore "too late." *Claiborne v. State*, 319 Ark. 602, 603, 892 S.W.2d 511, 512 (1995). Here, the record and abstract clearly show that defense counsel did not renew the motion for directed verdict until after the trial court read the jury instructions. Therefore, according to our case law and court rules, the motion was untimely, and we cannot consider the issue here.

## II. Admission of Photograph

In their next point on appeal, the Robinsons argue that the trial court erred in admitting the picture from a music group's cassette-tape cover depicting Marcus Turner and others standing next to a black sports car. The defense objected to its admission, arguing that a picture of Turner standing next to a dark sports car was irrelevant in this case against the Robinsons. The prosecution argued that it was highly relevant because Mr. Gillum testified that Turner was the driver of the dark car, and that the picture depicts Turner standing next to a dark sports car. The trial judge allowed the picture to be admitted into evidence. On appeal, the Robinsons continue to argue that the trial court erred in admitting the evidence because a picture of Turner standing next to a dark sports car was irrelevant in this case against them. As they argued below, the Robinsons continue to argue that other than the picture, there is no evidence that Turner owned that car, and that even if he did, it is of no consequence in this case.

The court of appeals refused to address this issue on appeal because the Robinsons did not include a photocopy of the picture in the abstract, although a description of the picture was abstracted. We agree with the court of appeals and also refuse to reach the issue because our court rules require a photocopy of pictures and other similar exhibits to be included in the abstract.

Arkansas Supreme Court Rule 4-2(a)(6) discusses the abstracting rules, including those for photographs, stating in pertinent part:

> Whenever a map, plat, photograph, or other similar exhibit, *which* cannot be abstracted in words, must be examined for a clear understanding of the testimony, the appellant shall reproduce the exhibit by photography or other process and attach it to the copies of the abstract filed in the Court and served upon the opposing counsel, unless this requirement is shown to be impracticable and is waived by the Court upon motion.

Ark. Sup. Ct. R. 4-2(a)(6). (Emphasis added.) Whether photographs and such exhibits must be reproduced for each copy of the brief filed with the court rests on the word "which" in the above sentence. This rule is a classic example of the importance of using the exact word to describe the meaning to be conveyed and highlights the subtle difference between "which" and "that" in our language usage. Both "which" and "that" are relative pronouns, whose function is to introduce subordinate clauses. *See generally* William Strunk, Jr., and E.B. White, *The Elements of Style* 4-5 (New York: Macmillan Publishing Company, 1979). The difference between the two is based on whether the modified clause is restrictive or nonrestrictive — that is, whether the added information is necessary to describe the modified object (restrictive) or unnecessary and added merely for additional information (nonrestrictive). *Id.* In Rule 4-2(a)(6), "which" introduces a nonrestrictive subordinate clause adding additional information about photographs and other similar exhibits, and indicates that these types of exhibits cannot be abstracted in words. This explains why a waiver by the court is required when a party wants to abstract the exhibit in words rather than by photocopy. In contrast, had the rule used "that" for "which" and stated, "Whenever a map, plat, photograph, or other similar exhibit that cannot be abstracted in words. . .," the subordinate clause introduced by "that" would instead add necessary information describing a particular picture that could be abstracted in words, rather than generally describing all such exhibits, which cannot be described in words. However, by using the word "which" in the rule instead indicates that these exhibits are incapable of being abstracted in words and, therefore, must be reproduced unless the court specifically waives this requirement. Here, there was no waiver; therefore, failure to "abstract" the photograph by reproducing it "by photocopy or other process" precludes this court from reviewing this issue.

We have three fairly recent cases which deal with the abstracting of photographs and other similar exhibits. *See Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996); *Bunn v. State*, 320 Ark. 516, 898 S.W.2d 450 (1995); *Coney v. State*, 319 Ark. 709; 894 S.W.2d 583 (1995). In these cases, this court was faced with the failure of the defendant to reproduce copies of the photographs, and in all three cases, the court found the abstract flagrantly deficient and refused to reach the issue. The court in *Bunn*, for example, stated:

> We cannot consider the merits of Bunn's argument, as he failed to abstract the photograph as a part of his appeal. As we have stated many times, "[t]he appellant in a felony criminal appeal has 'the duty . . . to abstract such parts of the record . . . as are material to the points to be argued in the appellant's brief.'" *Wynn v. State*, 316 Ark. 414, 871 S.W.2d 593 (1994); *See also* Ark. Sup. Ct. R. 4-3(g). . . .

> \* \* \*

> Bunn did not present such a motion asking that we waive the requirements of Rule 4-2(a)(6); therefore, his failure to abstract the "mug shot" precludes our review of his argument on this point. As we have stated many times, the reason for this rule is basic – there is only one transcript, there are seven judges on this court, and it is impossible for each of the seven judges to examine the one transcript. *Franklin v. State*, 318 Ark. 99, 884 S.W.2d 246 (1994); *Dixon v. State*, 314 Ark. 378, 863 S.W.2d 282 (1993).

*Bunn*, 320 Ark. at 524-525. *Bunn* is particularly important because the issue there was the abstracting of a "mug shot," which necessarily only includes a person's face. It could have been argued there, as it was here, that a written description of the photograph was sufficient to instruct the court about what was in that picture. However, this court in *Bunn* determined that the photograph should have been reproduced. Such is the case here; therefore, because the Robinsons did not abstract the photograph at issue, the abstract is flagrantly deficient, and we cannot reach the merits.

### III.  Doyle *Violation*

In their third point on appeal, the Robinsons argue that the trial court erred in refusing to instruct the jury that the defendants had no obligation to give a statement to the police, thus resulting in a *Doyle* violation.  The Robinsons argue that the prosecutor improperly questioned Terrance about whether he had given a statement prior to testifying at trial, and that upon objection to such inquiry, defense counsel asked the court to instruct the jury that a defendant's silence cannot be used against him, which the court refused to do.  The Robinsons point out that the trial court did not allow the prosecutor during the State's case to ask Detective Dwight Stewart about Terrance's refusal to give a statement, determining that such testimony would be in error.  The State responds that the Robinsons not only failed to timely object to preserve the issue for appeal, but also invited this error in the defense's own cross-examination of Detective Stewart.  As such, the Robinsons cannot claim error now.

■ ■  A *Doyle* violation arises from *Doyle v. Ohio*, 426 U.S. 610 (1976), in which the defendants were cross-examined by the prosecutors about their post-*Miranda* silence and asked why they told an exculpatory story for the first time at trial.  The Supreme Court held that this was reversible error, stating:

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.  In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle*, 426 U.S. at 618.  In *Burnett v. State*, 310 Ark. 202, 832 S.W.2d 848 (1992), this court reviewed a Rule 37 petition including an issue regarding the defense attorney's failure to object to the prosecution's questioning the defendant about his silence during interrogation.  While we noted the language from *Doyle* regarding fundamental fairness, we also determined that trial counsel was not ineffective for failing to object to the line of questioning in that underlying trial due to trial strategy.  We also noted that "such questioning may be harmless error in some instances

where there is no prosecutorial focus or repetitive questioning or arguing centered on a defendant's silence and where the evidence of guilt is overwhelming. . . ." *Burnett*, 310 Ark. at 205.

Despite *Doyle's* fairly broad limitation on questioning, there are some exceptions. Where, for example, a comment on the defendant's post-arrest silence is not an attempt to impeach the defendant, it is not the type of comment prohibited by the court in *Doyle*. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996). In *Greer v. Miller*, 483 U.S. 756 (1987), the Court held that there was no *Doyle* violation where a question was asked by the prosecutor that touched upon the defendant's post-arrest silence, but was followed by an immediate objection sustained by the trial court and an admonishment to the jury that it should disregard any questions to which objections were sustained. In further defining *Doyle*, the Court stated that the prosecutor was not allowed to impeach the defendant with the silence, nor was the prosecutor otherwise permitted to call attention to the defendant's silence. In *Ferrell*, we found no error where a federal agent indicated that the defendant "refused to make a statement" during questioning. At trial, the defendant asked for a mistrial. We stated:

> Even if Cook's comment is construed as a reference to Ferrell's post-arrest silence, the reference was inadvertently elicited while Cook was attempting to explain Ferrell's demeanor, and the prosecution did not dwell on the reference. Under such circumstances, we will not reverse a trial court's decision to deny a mistrial. *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995); *Tarkington v. State*, 313 Ark. 399, 855 S.W.2d 306 (1993).

*Ferrell*, 325 Ark. at 464. In *Tarkington v. State*, 313 Ark. 399, 855 S.W.2d 306 (1993), we held that there was no *Doyle* violation when there was no comment or question by the prosecutor about appellant's post-arrest silence but instead there was an inadvertent reference to the defendant's silence by a witness.

In this case, there were three instances where the defendants' post-arrest silence was raised. First, following the defense's cross-examination of Detective Dwight Stewart in the State's case, the prosecutor asked to approach the bench to determine whether he

could ask Detective Stewart on redirect whether Terrance refused to give a statement to the police when he turned himself in. The prosecutor argued to the judge out of the jury's hearing that the defense attorney had opened the door to this line of questioning, and he wanted to follow-up with this inquiry. The trial judge stated, "No. She didn't open it up that much. I'm not gonna allow you to do that." Thereafter, the prosecutor indicated that he had no further questions for Detective Stewart at that time.

The second instance arose when defense counsel was questioning Detective Stewart during the defense's case. During the questioning, the following exchange occurred:

| DEFENSE ATTORNEY: | Okay. And during the course of your being in charge of this file, did you even become aware of the fact that I represented Tony and Terrance? |
| --- | --- |
| DET. STEWART: | Uh, after Terrance was arrested, I was aware of that. |
| DEFENSE ATTORNEY: | Okay. And did you ever contact me to see if my clients would make any statement? |
| DET. STEWART: | No, ma'am, because when he came in, I read 'em his rights, and he told me he didn't want to make any statement. |
| DEFENSE ATTORNEY: | Okay. Okay. That's fair. Did you — but you never contacted me to see if that posture had changed? |
| DET. STEWART: | No, ma'am. |

Finally, the third instance occurred when the prosecutor cross-examined Terrance. The following exchange occurred:

| PROSECUTOR: | Now, this is the first time you've told this story, right? You haven't given a statement before now, have you? |
| --- | --- |
| TERRANCE: | No, sir. |

DEFENSE ATTORNEY: Your Honor, I'm gonna object. May we approach?

(*The following conference was held at the bench out of the hearing of the jury.*)

DEFENSE ATTORNEY: I think we need an instruction if he's gonna ask these questions. He doesn't have an obligation to give a statement to anybody at any time, even today.

THE COURT: That's true.

PROSECUTOR: She put him on the stand. She also asked Officer Stewart, did you ever come by and ask my client — I just asked him if this is the first time he's told the story. I can do that, Judge.

DEFENSE ATTORNEY: That insinuates he has an obligation to do something.

PROSECUTOR: It isn't.

DEFENSE ATTORNEY: It does, too.

THE COURT: Well, you don't want to do anything that would suggest that — that he failed to give a statement at the time of his arrest because he's not obligated to.

PROSECUTOR: Judge, she opened the door when — let me say this: It can be prejudicial. I'll go on from here. But she asked Officer Stewart and he said, no, he didn't even want to give a statement at that time. I remember him saying that.

DEFENSE ATTORNEY: But that sounds like he's being unco-operative, and I think there needs to be a limiting instruction that tells the jury he has no obligation to testify even today.

THE COURT: Well now he does have an obligation when you put him on.

| | |
|---|---|
| DEFENSE ATTORNEY: | Only until I put him on, but — |
| THE COURT: | He's required — well, I know, you waived that when you put him up there. |
| PROSECUTOR: | You waive it when you put him on. |
| DEFENSE ATTORNEY: | Right. But I haven't waived it as to — he had no obligation until he took the stand. And I think there ought to be an instruction to that effect. |
| THE COURT: | No, I'm not going — I'm not going to give one on that. |
| DEFENSE ATTORNEY: | Okay. Thank you, Your Honor. |
| PROSECUTOR: | Thank you. |

In reviewing these three exchanges, it is clear that the first two cannot raise any *Doyle* issue because the first one took place out of the hearing of the jury and the second was brought forth by the defense itself, and no objection was raised by the defense attorney when Detective Stewart gave his testimony. As such, there is no issue for appeal.

Regarding the third exchange, the trial court's failure to give a limiting admonition to the jury does not rise to reversible error in this case. First and foremost, the jury already heard that Terrance and Tony both refused to give a statement to the police when defense counsel questioned Detective Stewart. Second, as the State points out, the Robinsons cannot show prejudice because the defense was the first to open the door to this revelation by bringing it to the jury's attention during Detective Stewart's cross-examination. *See Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998). In *Willis*, we held that there was no *Doyle* violation where the appellant opened the door to this line of questioning by his own testimony on direct examination concerning what he had and had not told the officers investigating the crime. *See also, Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301 (1986). Third, the prosecutor did not dwell on this line of questioning in the third exchange noted above, and he, in fact, ceased all ques-

tioning after the trial court sustained the defense's objection. *See Burnett, supra.* Appellant suffered no prejudicial error because he opened the door to this line of questioning and because the same or similar evidence was introduced at trial without objection. *Willis, supra.* Therefore, we do not find reversible error here.

## IV. Instruction on Alibi Defense

In their fourth point of appeal, the Robinsons argue that the trial court erred in failing to instruct the jury on their alibi defense. According to testimony at trial for the defense, Rose Robinson, Tony's mother and Terrance's grandmother, claimed that Terrance and Tony were with her on the night of the shooting and, therefore, they could not have been involved. On cross-examination, the prosecutor asked Rose about her son Darrell, who had been charged with murder in a separate matter years earlier, regarding whether Darrell's defense in that case was an alibi defense as well. She indicated that it was not, and that she had not testified in that case. There was no objection from the defense as to this line of questioning. However, at the close of the defense's case, defense counsel asked the court to instruct the jury that the case against Darrell was dismissed prior to trial by the prosecutor so that the jury would not mistakenly believe that Rose used the alibi defense for Darrell in his case. The trial court ultimately instructed the jury that there was no trial in Darrell's case. On appeal, however, the Robinsons argue that the trial court did not go far enough in instructing the jury that Rose never gave an alibi defense in that case because there was no trial. The State responds by arguing that this issue is not preserved for appeal because the defense's objection was not timely, the argument is not supported by legal authority or convincing argument, the requested instruction was not abstracted by the defense, and the judge gave an instruction to the jury that a trial was not held in Darrell's case, thus implying that no alibi defense could have been given anyway.

This is an issue on which the contemporaneous-objection rule applies. This court will not consider arguments on appeal in the absence of a specific, contemporaneous objection at trial. *See Johnson v. State,* 342 Ark. 186, 27 S.W.3d 405 (2000). The purpose of the contemporaneous–objection rule is to give the

trial court a fair opportunity to consider an allegation of error and to correct it, if the allegation is meritorious. *See Brooks v. State*, 256 Ark. 1059, 511 S.W.2d 654 (1974); *Western Union Tel. Co. v. Freeman*, 121 Ark. 124, 180 S.W. 743 (1915); *Jones v. Seymour*, 95 Ark. 593, 130 S.W. 560 (1910). In *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999), for example, we held that the appellant's failure to make contemporaneous objections to the testimony of witnesses regarding his physically abusive conduct towards them prevented him from asserting error on appeal. Such is the case here in that while Rose's testimony is arguably objectionable due to the prosecutor's questions and implications, the defense failed to object to any of the questions or implications during Rose's testimony. In fact, the defense's request for a clarifying instruction did not arise until the close of the defense's case, after another seven witnesses testified.

Furthermore, the trial court did give an instruction to the jury even without a contemporaneous objection, and this instruction cured any possible prejudice. However, even if it had not, it was incumbent upon the defense to proffer an instruction for this court's review. We have been constant in our requirement that counsel object and proffer an instruction in order to later appeal, and we have been hesitant to allow exceptions to this requirement. *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998); *Brown v. State*, 320 Ark. 201, 895 S.W.2d 909 (1995). Therefore, although the defense appears to argue that the trial court's admonishing instruction was not sufficient to cure any error, the defense proffered no alternative at trial for the trial court to consider then or for this court to consider on review.

### V. Motions for New Trial

In their next point on appeal, the Robinsons argue that trial court erred in denying their identical motions for a new trial after a hearing. In their motions for new trial, the Robinsons argued that the State failed to disclose the names and addresses of two witnesses, that this information was new evidence not previously discoverable by the defense, and that there was misconduct by the prosecutor in introducing the picture of Marcus Turner standing in front of the black car. The State responds that the Robinsons'

motions for new trial were untimely or, in the alternative, that the trial court did not abuse its discretion in denying the motion on the claim of newly discovered evidence.

We cannot consider the merits of the motions for new trial because the defense did not timely file these motions, as we determined in a previous decision in this case in *Robinson v. State*, 342 Ark. 384, 39 S.W.3d 432 (2000) (*"Robinson I"*). In *Robinson I*, this court addressed whether the Robinsons' notice of appeal was timely filed, as it was filed more than thirty days beyond the entry of the judgment and commitment order, and could not have been timely based on the trial court's ruling on the motions for new trial because those motions were void. The court explained, stating:

> The issue before us is whether these posttrial motions were effective. Stated differently, are posttrial motions following a criminal trial void and ineffective if filed before entry of the judgments?
>
> In *Brown v. State, supra,* a motion for new trial and motion for judgment notwithstanding the verdict were filed after the jury verdict but before entry of the judgment and commitment order. The appellant in that case had been found guilty of capital murder and the jury's sentence was life in prison without the possibility of parole. The posttrial motions were premised on the fact that the jury only deliberated for ten minutes on the appellant's guilt. We held that the issue raised in both posttrial motions was not preserved for our review. We said:
>
>> As an initial matter, both the posttrial motions in this matter were ineffective because they were filed before the judgment was entered in this case. *See Hicks v. State*, 324 Ark. 450, 921 S.W.2d 604 (1996) (per curiam); *Webster v. State*, 320 Ark. 393, 896 S.W.2d 890 (1995) (per curiam). Because the motions are void, we treat them as if they had never been made.
>
> *Brown*, 333 Ark. at 700, 970 S.W.2d at 288.
>
> Similarly, in the case at hand the posttrial motions for a new trial were void and of no effect because they were filed before the judgments were entered. The notice of appeal in this case was filed forty-five days after the entry of the judgments. Since the

posttrial motions did not extend the period of time in which to appeal due to their ineffectiveness, the appeal is untimely.

The Robinsons contend that under one appellate rule for civil matters, and specifically under Ark. R. Civ. P. 59(b), new trial motions filed prematurely are deemed filed the day after judgment. However, that is not the case in criminal appeals as has been clearly set forth in *Brown v. State, supra.*

The Robinsons also maintain that they were misled by the trial court, which held the hearing on the motions for new trial after the thirty-day period for filing a notice of appeal had passed. Placing the responsibility on the trial court is not enough to excuse the absence of subject-matter jurisdiction in this court. *Daniels v. State,* 338 Ark. 328, 5 S.W.3d 1 (1999) (per curiam); *Cook v. State,* 327 Ark. 125, 937 S.W.2d 641 (1997) (per curiam); *Benton v. State,* 325 Ark. 246, 925 S.W.2d 401 (1996) (per curiam).

*Robinson I,* 342 Ark. at 386-387. Despite the first dismissal of the appeal in *Robinson I,* this court subsequently granted a motion for a belated appeal filed by defense counsel, thus allowing this current appeal.

■ ■ Clearly, in *Robinson I* we determined that the motions for new trial were not timely filed, and that ruling is now law of the case. It is well settled that the decision on the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal. *Ghegan & Ghegan, Inc., v. Barclay,* 345 Ark. 514, 49 S.W.3d 652 (2001); *Morris v. Garmon,* 291 Ark. 67, 722 S.W.2d 571 (1987). In *Robinson I,* we not only decided that the motions for new trial were untimely pursuant to our holding in *Brown v. State,* 333 Ark. 698, 970 S.W.2d 287 (1998), but we also determined that Ark. R. Civ. P. 59(b) did not apply to this situation. As such, the Robinsons' attempt to reargue that issue on appeal here and in their petition for review is improper because it has already been addressed by this court.

■ Furthermore, Ark. R. Crim. P. 33.3, dealing with posttrial motions, is the parallel criminal rule to Ark. R. Civ. P. 59. However, where Rule 59(b) was amended in January 1999 to allow motions for new trial filed prior to entry of the judgment to be considered timely filed, the equivalent was not included in

Rule 33.3 until February 15, 2001. The prior version of Rule 33.3 did not contain within the rule a time requirement for filing, but this requirement was provided by case law in cases such as *Brown, supra,* Hicks v. State, 324 Ark. 450, 921 S.W.2d 604 (1996) (per curiam), and *Webster v. State,* 320 Ark. 393, 896 S.W.2d 890 (1995) (*per curiam*). Therefore, at the time the motions for new trial were filed, the trial court considered the motions and denied them, and this court addressed the matter in *Robinson I,* the motions for new trial were untimely under the Arkansas Rules of Criminal Procedure pursuant to our decisions in *Brown, Hicks,* and *Webster.* Therefore, this issue is barred from our review by law of the case.

## *VI. Testimony Regarding Police Involvement*

For their sixth argument on appeal, the Robinsons argue that the trial court erred in allowing testimony that a police officer, Lacey Robertson, had informed the Robinsons that the Gillums had left the police station on the night of the shooting and were going home. The Robinsons argue that reference to Robertson's presence at the police station, the fact that Tony turned himself in to Robertson, and that Robertson was Rose Robinson's business accountant was "prejudicial and highly speculative" under Ark. R. Evid. 403, thus making the references at trial reversible error. The State responds that it does not understand the Robinsons' argument and, regardless, there was no objection below, and the argument is not supported by any legal authority or relevant argument.

We will not consider this argument because there was no objection raised by the defense at trial to any of this evidence, and because the defense has failed on appeal to cite any legal authority, other than a statement that this evidence was highly prejudicial under Ark. R. Evid. 403, to warrant reversal. The law is well settled that to preserve an issue for appeal a defendant must object at the first opportunity. *Pyle v. State,* 340 Ark. 53, 8 S.W.3d 491 (2000); *Vaughn v. State,* 338 Ark. 220, 992 S.W.2d 785 (1999); *Smallwood v. State,* 326 Ark. 813, 935 S.W.2d 530 (1996); *Hill v. State,* 285 Ark. 77, 685 S.W.2d 495 (1985). Furthermore, failure to cite authority or make a convincing argument is sufficient reason for affirmance. *Ayers v. State,* 334 Ark.

258, 975 S.W.2d 88 (1998); *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). It is certainly not apparent without further research that appellant's argument is well-taken. *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996).

## VII. Prosecutorial Misconduct

Finally, the Robinsons argue that the case should be reversed due to cumulative prosecutorial misconduct. They argue that the prosecutor's reference to a police conspiracy, reference to unrelated, inadmissible crimes committed by the Robinsons, improper questioning of Terrance about his refusal to give a statement to the police, and improper questioning of Rose Robinson about the photograph of Marcus Turner all support reversal of this case. The State responds that in order to preserve a cumulative-error argument, the defense must raise the argument below and demonstrate the alleged accumulation of error. *See Willis, supra.* Furthermore, the State notes that some of these issues were raised in the other six points on appeal, and that this argument is not supported by any legal authority nor is there any showing of prejudice.

Once again, we do not reach the merits of this argument due to the Robinsons' failure to cite any authority whatsoever, or failure to show that any prejudice has occurred. While the defense quoted *Timmons v. State*, 286 Ark. 42, 688 S.W.2d 944 (1985), for language about prosecutorial misconduct, it completely failed to explain how this case applies to these facts here. Basically, we are left guessing about its application to these specific facts. Furthermore, this court has repeatedly held that for a cumulative-error argument to be upheld on appeal, the appellant must show that there were objections to the alleged errors individually and that a cumulative-error objection was made to the trial court and a ruling obtained. *See, e.g., Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). This court does not recognize the doctrine of cumulative error where there is no error to accumulate. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994).

Affirmed.

BROWN and IMBER, JJ., concur.

ROBERT L. BROWN, Justice, concurring. My disagreement with the majority opinion concerns its conclusion that photographs could not have been abstracted in words under Ark. Sup. Ct. R. 4-2(a)(6), as it read on May 17, 2001, when the appellants' brief was filed, but had to be reproduced as part of the abstract absent a court waiver.[1] Under the majority's interpretation, maps, plats, photographs and similar exhibits could not have been abstracted in words at that time but had to have been reproduced in their entirety as part of the abstract.

I disagree with the majority because the clear language of Rule 4-2(a)(6), as it read on May 17, 2001, contradicts that construction. It provides in pertinent part:

> Whenever a map, plat, photograph, or other similar exhibit, *which cannot be abstracted in words*, must be examined for a clear understanding of the testimony, the appellant shall reproduce the exhibit by photography or other process and attach it to the copies of the abstract filed in the Court and served upon the opposing counsel, unless this requirement is shown to be impracticable and is waived by the Court upon motion. (Emphasis added).

The clause, "which cannot be abstracted in words," is unquestionably a condition that had to have been met before reproduction of the photograph was required. There is, too, the fact that we removed this clause in our May 31, 2001 *per curiam. See In re: Modification of the Abstracting System—Amendments to Supreme Court Rules 2-3, 4-2, 4-3, and 4-4*, 345 Ark. Appendix 626 (2001). The clause had to have had some meaning or we would not have removed it.

The majority deals with this clause by making a highly technical grammatical distinction between the pronouns "that" and "which." The result of this analysis is to deny the appellants appellate review on a grammatical point. I object to that. This court has taken pains to remove procedural pitfalls that have plagued parties in the past. The creation of this "trap" is unnecessary in my judgment.

---

[1] By *per curiam* dated May 31, 2001, we amended our Supreme Court Rules to eliminate the clause "which cannot be abstracted in words." Rule 4-2(a)(6) is now Rule 4-2(a)(5).

Having said that, I too would affirm this case, but I would do so on the merits. The photograph in question was adequately described in the abstract through the testimony of the prosecuting attorney. In describing the photograph on the cassette which is at issue, the prosecutor said: "This is the CD of Marcus Turner standing on the outside of the vehicle. The sports car looks dark." That description is repeated in the abstract by the appellants and adequately describes the front cover of the cassette that was admitted into evidence. We, thus, have a sufficiently described photograph in the abstract to allow us to decide this issue on the merits.

The appellants argue that the cassette photograph was "of no consequence" as to whether Marcus Turner was driving a black car with appellants as passengers. Apparently, the appellants are arguing irrelevancy as they cite Arkansas Rule of Evidence 401, which defines "relevant evidence," but they cite no other authority. When an appellant's arguments are obviously lacking in merit and are unsupported by any citation of authority, this court has declined to research the issue on the appellant's behalf or consider the point. *See Gardner v. State,* 296 Ark. 41, 754 S.W.2d 518 (1988). Furthermore, the cassette photograph is clearly relevant as it showed Marcus Turner, a co-defendant to be tried in a separate trial, standing in front of a car similar to the one described by prosecution witness as the dark-colored sports car in which the appellants were riding when the crime was committed. A ruling on the relevancy of evidence is discretionary with the trial court and will not be disturbed absent an abuse of discretion. *See Bohanan v. State,* 324 Ark. 158, 919 S.W.2d 198 (1996). There was no abuse of discretion in this case. For that reason, I would affirm.

IMBER, J., joins.