Richard Thomas BUNN *v.* STATE of Arkansas

CR 94-1081                                   898 S.W.2d 450

Supreme Court of Arkansas
Opinion delivered May 22, 1995
[Rehearing denied June 12, 1995]

*Kent McLemore*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Richard Thomas Bunn, appeals his conviction of three counts of delivery of a controlled substance, cocaine, and asserts the following five points of error: (1) that the trial court erred in failing to grant his motion for severance of Count III from Counts I and II of the offenses charged; (2) that the trial court abused its discretion in admitting his "mug shot" into evidence; (3) that the trial court erred in admitting into evidence transcripts of recordings of two of the drug transactions; (4) that the trial court erred in admitting and allowing testimony about a letter purportedly written by him, in which he allegedly threatened a witness for the State; and (5) that the trial court erred in failing to declare Arkansas's bifurcated sentencing procedures unconstitutional. Finding merit in

the appellant's claim that the trial court erred by refusing to sever offenses prior to trial, we reverse and remand.

## Facts

In October of 1993, Leslie Blackburn contacted the Fourth Judicial Drug Task Force about working as a confidential informant. Blackburn, who was serving a ten-day jail sentence, told officers that he could buy some cocaine from the appellant, Richard Thomas Bunn, as he "had been there before to buy it." On October 21, 1993, Blackburn had a meeting with officers at the Fayetteville Police Department to arrange for a drug buy from Bunn. Blackburn's person was searched for money and drugs, and, finding neither, officers wired him with a body microphone, and gave him $50.00 to purchase the cocaine. Officers drove Blackburn to the area of Bunn's trailer at 2605 Villa Boulevard, #1, where he entered to find Bunn, Andy Holm, Isaac Allen, "Amp," Sandra Williams, and Sabrina Williams inside. According to Officer McCarty, who, together with other officers, was conducting visual and audio surveillance, Blackburn exited the trailer six minutes later, turned a rock of cocaine over to officers, and told them he had purchased it from Bunn. Blackburn was returned to the police department, searched, then taken back to the area of Bunn's trailer approximately twenty-five minutes later, where he was again searched for drugs and money with negative results, given $50.00, and wired with a body microphone. Blackburn once again entered Bunn's trailer, where he stayed between fourteen and sixteen minutes, purchased a rock of cocaine from Bunn, and turned it over to officers.

Two days later, on October 23, 1993, Darryl Williams, who had been working as a confidential informant since July of 1993 in order to help pay his bills, met with officers to arrange for a drug buy from Bunn. Williams was searched for money and drugs with negative results, wired with a body microphone, and given $50.00 before he was dropped off near Bunn's trailer. Williams, who did not know Bunn, entered the trailer, recognized someone that he "knew from the streets" named Billy Joe, and returned a rock of crack cocaine to officers approximately four minutes later, describing the seller as a person who looked like the actor-dancer Gregory Hines. According to Officer McCarty, as he and other officers had been given this description before and "fig-

ured it was Bunn," they showed Williams a "mug shot" of Bunn upon their return to the police department, from which he identified Bunn as the person who had sold him the cocaine.

Bunn was charged by felony information with three counts of delivery of a controlled substance, cocaine. Counts I and II each alleged that Bunn had illegally delivered approximately 1/4 gram of crack cocaine to a confidential informant (i.e., Blackburn) in exchange for $50.00 on October 21, 1993. Count III alleged that Bunn had delivered approximately 1/4 gram of crack cocaine to a confidential informant (i.e., Williams) in exchange for $50.00 on October 23, 1993. Prior to trial, Bunn filed a motion to sever Count III from Counts I and II of the offenses charged, as well as a motion to declare Act 535 of 1993, Arkansas's bifurcated sentencing procedures, unconstitutional. The trial court denied both motions, and at trial, the State offered the testimony of both informants, Officer McCarty, and Norman Kemper, a forensic chemist with the State Crime Lab, who examined the three "rocks" and determined that each was cocaine base. It was through Officer McCarty's testimony that the State sought and obtained admission, over objection, of Bunn's "mug shot," as well as two transcripts of the taped transactions, in which Officer McCarty had identified Bunn as the seller of the cocaine "based upon what the informant had told him." Officer McCarty further stated that while he had been around Bunn before and knew what his voice sounded like, he could not positively identify the voice on the tape as being Bunn's. The State rested.

After renewing his motion to sever Count III, Bunn presented the testimony of Isaac Allen and Melvin "Big" Salley, both of whom, after listening to the tape of the Blackburn transaction, concluded that the voice of the seller was not Bunn's, but was Andy Holm's, and both of whom denied seeing Bunn sell cocaine to Blackburn. Bunn rested his defense and again renewed his motion to sever.

As rebuttal evidence, the State presented the testimony of Sabrina Williams, a sixteen-year-old convicted felon who testified that she knew Bunn, as he was her mother's former boyfriend, and that Bunn had "sold crack cocaine twenty times." According to Sabrina, he would get the cocaine from her, then bring her back the money. Sabrina's mother, Sandra Williams, corrobo-

rated her daughter's testimony. Admitting that she was presently facing drug and forgery charges, and that she was expecting to receive favorable treatment in return for her testimony, Sandra testified, over objection, that she had received a letter from Bunn in late December of 1993, or early January of 1994, in which Bunn threatened her, stating that, "If you let someone find this letter or you tell on me, I will hunt you down." Also over Bunn's objection, the State sought and obtained admission of the letter into evidence.

As further rebuttal evidence, Andy Holm testified on behalf of the State, and while admitting he had sold drugs while living with Bunn in Bunn's trailer, and that he had sold drugs to Blackburn one or two times, he denied having sold to him twice in the same day. He further testified that Bunn had also sold drugs, as Bunn "would knock on the doors, show me the amount of money he had and I would give him the dope," and he (Holm) "would hear people coming in" and "would put two and two together."

At the conclusion of the State's rebuttal testimony, Bunn did not renew his motion to sever. Thereafter, the case was submitted to the jury who found Bunn guilty of the counts as charged, and the trial court conducted sentencing procedures as required by Act 535 of 1993, after which, the jury assessed punishment. As a result, the trial court sentenced Bunn to a forty-two-year term of imprisonment, encompassing the counts charged, as well as a theft of property charge to which Bunn pleaded guilty, and a revocation of probation charge. It is from this sentence that Bunn appeals.

### I. Motion to sever

For his first argument on appeal, Bunn asserts that the trial court erred in refusing to grant his motion to sever Count III of the information from Counts I and II. Prior to trial, Bunn filed a written motion to sever the offenses pursuant to Ark. R. Crim. P. 22.3, arguing that severance was necessary to achieve a fair determination of his guilt or innocence of each offense. At a pre-trial hearing, counsel for Bunn agreed that the charges were of the same or similar character, but argued that Count III should be severed from Counts I and II because it was "not part of the same single scheme or plan as the first two . . ." After hearing argument from the State, the trial court ruled on the motion as follows:

Well, the State is alleging that these are all a part of a common scheme or plan and if, by chance, the proof is otherwise, then I think the Court is still permitted to sever out one or more of the counts. But those are all the allegations made by the State. It's sort of a matter of proof at this point. It seems to me, as I've just inquired, they're identical charges, although they did — apparently these alleged offenses occurred at some — two on one particular occasion; one at some later time but, nonetheless, still in fairly close proximity to the earlier conduct or alleged conduct so I'm going to deny the motion. You may want to raise it at some point during the trial.

Bunn renewed his motion to sever the offenses at the close of the State's case, and again after the presentation of his case, but before the State offered rebuttal testimony. The trial court denied the motion, concluding that the testimony of the witnesses showed a common scheme or plan, and that "all offenses were very similar, if not identical."

The trial court's rulings were in error. Arkansas Rules of Criminal Procedure 21 and 22 provide for joinder and severance of offenses, respectively. We have said that Rule 22.1(b) does not require that a motion to sever be renewed at the end of all the evidence but "before" or at the close of all the proof. *Rockett* v. *State*, 319 Ark. 335, 891 S.W.2d 366 (1995). Thus, as Bunn renewed his motion to sever at the close of the State's case-in-chief and at the end of his case, he did so "before or at the close of all the evidence" in conformance with the rule.

Rule 21.1 is a broad rule, allowing for joinder of offenses when they "(a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or a series of acts connected together or constituting parts of a single scheme or plan." Rule 22.2, the severance rule, "recognizes the grave risk of prejudice from joint disposition of unrelated charges and, accordingly, provides a defendant with an absolute right to a severance of offenses joined solely on the ground that they are of same or similar character." *Clay* v. *State*, 318 Ark. 550, 886 S.W.2d 608 (1994); *See also Commentary to Article VI*. It provides in pertinent part that:

(a) Whenever two (2) or more offenses have been joined

for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have the right to a severance of the offenses.

(b) The court, on application of the . . . defendant other than under subsection (a), shall grant a severance of offenses:

(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . .

A.R.Cr.P. Rule 37.2(a)-(b)(i).

In *Clay* v. *State, supra,* we made our position clear regarding what constitutes "a single scheme or plan," stating that:

A single scheme or plan is discussed in the 1987 Unofficial Supplementary Commentary to Rule 21.1 as follows:

One who burglarizes an office on January 1 and a home on February 1 may be charged in the same information with both offenses, since they are "of similar character." He would be entitled to severance under Rule 22.2(a), however, unless the offenses were part of a single scheme or plan or criminal episode. Even though roughly the same type of conduct might be argued to be involved in both burglaries, justifying joinder under Rule 21.1(b), the term "same conduct" in Rule 21.1(b) was probably intended to be read literally to refer to contemporaneous events and to permit joinder in a situation where, for example, a defendant robs three persons simultaneously.

In conformity with that commentary, in *Teas* v. *State,* 266 Ark. 572, 587 S.W.2d 28 (1979), we said that when an informer went to the home of the defendant and purchased some marijuana and a week later went back and purchased two morphine tablets from the same defendant, the evidence was insufficient to show that the sales were part of a single scheme or plan on the part of the defendant within the meaning of Rule 22.2. We reversed and remanded the case for a severance of the offenses. In a concurring opinion Justice George Rose Smith wrote:

Criminal Procedure Rule 22.2 gives the defendant an absolute right to a severance when two or more offenses have been joined for trial solely on the ground that they are of similar character, but they are not part of a single scheme. Here the two offenses, sales of drugs, are unquestionably similar; so the controlling question is whether they were committed as part of a "single scheme or plan."

I think it clear that they were not so committed. The purpose of Rule 22.2 is to give effect to the principle that the State cannot bolster its case against the accused by proving that he has committed other similar offenses in the past. *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). There are exceptions to that principle, however, as when two or more crimes are part of the same transaction, *Harris* v. *State*, 239 Ark. 771, 394 S.W.2d 135 (1965), *cert. denied*, 386 U.S. 964 (1967), or when two or more offenses have been planned in advance, as part of a single scheme. *Ford* v. *State*, 34 Ark. 649 (1879). The intent of Rule 22.2 must have been to carry into effect the spirit of those exceptions, by permitting the charges to be tried together when they are parts of a single scheme.

In drug cases the State cannot ordinarily prove that the accused sold drugs on one occasion by proving that he sold them on other occasions. *Rios* v. *State*, 262 Ark. 650, 473 S.W.2d 198 (1977); *Sweatt* v. *State*, 251 Ark. 650, 473 S.W.2d 913 (1971). Such proof of other sales, as we pointed out in *Sweatt*, would merely show that the accused had dealt in drugs before and hence was likely to do it again.

*Teas* v. *State*, 266 Ark. 572, 575, 587 S.W.2d 28, 30 (1979) (Smith, J., concurring).

318 Ark. 550 at 553-555, 886 S.W.2d 608 at 610-611.

■ The record is void of any evidence that the offense charged in Count III was planned in advance or as a part of the offenses charged in Counts I and II. In fact, the testimony of

Williams indicates the contrary, as he testified that, at the time he purchased cocaine from Bunn, he did not know him, nor had he ever seen him before. It was Williams's testimony that upon entering Bunn's trailer, he lied about having been there before, but "didn't have trouble buying the crack" once he recognized someone he "knew from the streets" named Billy Joe. Thus, it cannot be said that Bunn planned the delivery to Williams in advance. Moreover, the offense charged in Count III involves a different informant and occurred two days after the offenses alleged in Counts I and II. Under these circumstances, and pursuant to our holding in *Clay* v. *State, supra*, it was error for the trial court to deny Bunn's motion to sever, as the offenses did not involve a single scheme or plan.

## II. Issues in the event of retrial

We discuss the other four points of appeal for the guidance of the trial court and counsel on remand, as it is likely that these issues will arise again at subsequent trials. *Diffee* v. *State*, 319 Ark. 669, 894 S.W.2d 564 (1995); *Spring Creek* v. *Sarrett*, 319 Ark. 259, 890 S.W.2d 598 (1995).

### A. Admission of "mug shot"

Bunn alleges that the trial court abused its discretion in admitting his "mug shot" into evidence. During the State's case-in-chief, Detective Alan McCarty testified that upon Williams's return from Bunn's trailer, Williams told officers that the person who sold him the cocaine looked like Gregory Hines. It was Officer McCarty's testimony that, as he and other officers had been given this description before and "figured it was Bunn," they returned to the police department, where another officer showed a department photograph of Bunn to Williams. After Officer McCarty testified that Williams identified Bunn from the picture as the person who had sold him the cocaine, the State sought and obtained introduction of the picture into evidence.

We cannot consider the merits of Bunn's argument, as he failed to abstract the photograph as a part of his appeal. As we have stated many times, "[t]he appellant in a felony criminal appeal has 'the duty . . . to abstract such parts of the record . . . as are material to the points to be argued in the appellant's brief.'" *Wynn* v. *State*, 316 Ark. 414, 871 S.W.2d 593 (1994); *See also*

Ark. Sup. Ct. R. 4-3(g). Moreover, Ark. Sup. Ct. R. 4-2(a)(6) provides that

> Whenever a map, plat, *photograph*, or other similar exhibit, which cannot be abstracted in words, must be examined for a clear understanding of the testimony, *the appellant shall reproduce* the exhibit by photography or other process and attach it to the copies of the abstract filed in the Court and served upon the opposing counsel, unless this requirement is shown to be impracticable and is waived by the Court upon motion.

(Emphasis added.)

Bunn did not present such a motion asking that we waive the requirements of Rule 4-2(a)(6); therefore, his failure to abstract the "mug shot" precludes our review of his argument on this point. As we have stated many times, the reason for this rule is basic — there is only one transcript, there are seven judges on this court, and it is impossible for each of the seven judges to examine the one transcript. *Franklin* v. *State*, 318 Ark. 99, 884 S.W.2d 246 (1994); *Dixon* v. *State*, 314 Ark. 378, 863 S.W.2d 282 (1993).

### B. Admission of transcripts

Bunn next asserts that the trial court erroneously admitted transcripts of the recordings of the first and third transactions into evidence, asserting that the transcripts were not properly authenticated under Arkansas Rule of Evidence 901, and that they were unduly prejudicial under A.R.E. 403.

At trial, tapes of both the October 21, 1993, Blackburn transactions, and the October 23, 1993, Williams transaction were admitted without objection. Officer McCarty then testified that he had transcripts of the tapes prepared, identifying State's Exhibit 4 as a transcript of Blackburn's first cocaine purchase, and State's Exhibit 5 as a transcript of Williams's cocaine purchase. Bunn then made a "foundational objection," and the trial court asked that the tapes be played and that Bunn review the transcript.

Officer McCarty testified that he listened to the tapes twenty or thirty times for approximately three hours, took notes, wrote down what he heard, had his secretary type what he had written,

then compared what she had typed with his notes. Regarding State's Exhibit Four, Officer McCarty stated that he identified the persons on the transcript as "the confidential informant and who I believe to be Richard Bunn," as he "attributed Richard Bunn's name to the person selling the cocaine based on what the informant told me." He further testified that "[t]he voice appeared to be the person selling crack cocaine or negotiating the transaction." While he testified that he "kn[ew] what Richard Bunn's voice sounds like by having been around him and having heard him talk," he stated that he couldn't "positively identify" the voice on the tape as Bunn's.

The trial court overruled Bunn's "foundational objection," finding that Officer McCarty had clearly testified how the transcripts were prepared. We agree that the transcripts were properly authenticated under A.R.E. 901, as Officer McCarty's opinion that the voice on the tape was Bunn's was clearly "based upon [his] hearing the voice at any time under circumstances connecting it with the alleged speaker." *See* A.R.E. 901(b)(5).

After allowing Bunn to voir dire Officer McCarty, the trial court overruled Bunn's Rule 403 objection, concluding that the jury could give whatever weight that it desires to the tapes and the transcripts. The thrust of Bunn's argument is that State's Exhibit 4 erroneously attributes his name to one of the voices with the use of his initials, "RB." (State's Exhibit 5 attributes the voice on the tape to an unknown male, labeled "UM.") However, the State asserts, and we agree, that because Bunn failed to ask that the objectionable part of the transcript, or the "RB," be separated, the trial court was not required to sustain an objection to the entire transcript. *See Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985). Moreover, transcripts which are essentially accurate are admissible. *See Leavy* v. *State*, 314 Ark. 231, 862 S.W.2d 832 (1993). Under these circumstances, we cannot say that the trial court's ruling that the jury could give whatever weight that it desired to the tapes and the transcripts was in error.

### C. Admission of letter

For his fourth assignment of error, Bunn maintains that the trial court abused its discretion in admitting a letter purportedly written by him to Sandra Williams into evidence,

and in allowing her to testify about the letter at trial. Sandra, who had previously lived with Bunn, testified that she had received a letter from Bunn in late December of 1993, or early January of 1994, in which Bunn threatened her, stating that, "If you let someone find this letter or you tell on me, I will hunt you down." The trial court admitted the letter over Bunn's objection. On appeal, he argues that the letter was more prejudicial than probative and was thus admitted in violation of A.R.E. 403. However, he failed to object to Sandra's earlier testimony concerning the letter as follows:

> PROSECUTOR: . . . Ms. Williams, have you ever been threatened by Mr. Bunn with reference to your testimony today?
>
> WITNESS: Uh, I've been threatened. I have a letter saying that when he was in jail if I told anything on him, he would hunt me down.
>
> PROSECUTOR: Do you have that letter with you?
>
> WITNESS: Yes I do.

Bunn did not object until the State actually sought and obtained admission of the letter. As stated in *Gonzalez* v. *State*, 306 Ark. 1, 811 S.W.2d 760 (1991), evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial. *See also Williams* v. *Southwestern Bell Tel. Co.*, 319 Ark. 626, 893 S.W.2d 770 (1995). As such, Bunn has not demonstrated prejudice on this point. We will not reverse in the absence of prejudice. *See Caldwell* v. *State*, 319 Ark. 243, 891 S.W.2d 42 (1995).

### D. Act 535 of 1993

For his final point of error, Bunn asserts that the trial court erred in refusing to declare Act 535 of 1993, Arkansas's bifurcated sentencing procedures, unconstitutional. Due to his failure to abstract any part of the sentencing proceedings at trial, we will not consider his argument on this point. *Wynn* v. *State, supra, Franklin* v. *State, supra; Dixon* v. *State, supra.*

Reversed and remanded.