KELLY, C.J.
(dissenting). I respectfully dissent. The majority erroneously concludes that MCR 6.120 superseded People v Tobey.[1] I disagree because the court rule and Tobey can be reconciled. Moreover, in rejecting Tobey, the opinion offers no persuasive reason why MCR 6.120 does not require that defendant’s alleged offenses be severed for trial. I therefore disagree with its analysis and conclusions. The offenses should have been separately tried, and the failure to sever them was not harmless error. Therefore, I would reverse the judgment of the Court of Appeals.
There are three flaws in the majority’s analytical approach. Tobey and MCR 6.120 are currently the controlling authority on joinder and severance. Thus, I believe the appropriate initial question for the Court is whether the two standards for joinder and severance are reconcilable.
*251 However, the starting point for the majority’s analysis is its own determination that the offenses in this case were “related” under MCR 6.120. Only then does it proceed to determine whether Tobey is consistent with the court rule. This cart-before-the-horse reasoning certainly makes it easier to conclude that the two standards are irreconcilable, given that Tobey explicitly held that essentially the same offenses were not properly joined. But this approach prejudges the central question at issue.
Second, the majority never compares the language of Tobey with the language of MCR 6.120. Yet it concludes that the language of Tobey is inconsistent with the “plain language” of MCR 6.120.[2]
Third, the majority engages in lengthy and largely irrelevant criticism of the language in the authority that Tobey relies on to support its holding. This analysis is of questionable assistance in determining whether the two standards can be reconciled because it ignores the language of Tobey’s actual holding.
*252 Therefore, the majority provides little basis for its conclusion that Tobey is irreconcilable with MCR 6.120. The opinion’s often reiterated conclusion that Tobey is inconsistent with the “unambiguous language” of MCR 6.120 does not become more persuasive through repetition.
I. MCE 6.120 AND TOBEY ABE RECONCILABLE AND CONSISTENT WITH ONE ANOTHER
Any meaningful analysis of whether Tobey is consistent with MCR 6.120 requires the answers to two key questions. First, for joinder and severance purposes, what relationship must exist between the charged criminal offenses? Second, under what circumstances is joinder allowed or severance mandated? If the answers to these questions are consistent under both a Tobey analysis and an MCR 6.120 analysis, the two can be applied harmoniously. I will address each of the questions separately.
A. DEFINITION OF “RELATED” OFFENSES[3]
The majority’s attempt to distinguish the language of MCR 6.120 from the authority cited in Tobey ignores Tobey’s central holding. Certainly, some of the authority on which Tobey relies quotes language that differs from the language of the court rule.[4] However, Tobey’s hold *253 ing did not incorporate any language from those sources that is inconsistent with the definition of “related” offenses in MCR 6.120.[5]
The key portion of the Tobey opinion states:
We adhere again to our earlier precedents and hold: a judge must sever two or more offenses when the offenses *254 have been joined for trial solely on the ground that they are of the “same or similar character” and the defendant files a timely motion for severance objecting to the joinder ... a judge has no discretion to permit the joinder for trial of separate offenses committed at different times unless the offenses “are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.”[6]
Tobey therefore held that joinder is appropriate when charged offenses are of the same or similar character, but the charges must be severed if a timely motion for severance is filed. Tobey also held that offenses cannot be joined unless they are based on (1) the same conduct, (2) a series of acts connected together, or (3) a series of acts constituting parts of a single scheme or plan. The language used in 1 through 3 is virtually identical to the language used in MCR 6.120 when it defines what constitutes a “related” offense.[7]
Moreover, just as Tobey rejected connecting offenses solely on the basis that they are of “the same or similar character,” MCR 6.120 omits that language from its definition of “related” offenses.[8] Therefore, the court rule’s definition of “related” offenses requires the same *255 connection between criminal offenses for joinder and severance purposes that Tobey did.
B. NEGATIVE JOINDER AND AFFIRMATIVE RIGHT TO SEVERANCE
The second question in the analysis is whether Tobey and MCR 6.120 allow joinder and mandate severance of offenses in a manner consistent with one another. MCR 6.120 permits joinder of offenses under any circumstances, which Tobey did not. However, MCR 6.120 also requires severance of “unrelated” offenses upon a defendant’s timely motion for severance. As discussed previously, MCR 6.120 defined “related” offenses using language virtually identical to that used in Tobey.
Thus, the sole substantive difference between Tobey and MCR 6.120 concerns whether joinder of offenses is allowed in the first instance. But where, as in the case before us, a defendant makes a timely motion for severance, this distinction makes no practical difference and does not render the two irreconcilable.[9]
*256 C. THE STAFF COMMENT TO MCR 6.120 AND DAUGHENBAUGH
Finally, I note that the staff comment to MCR 6.120 states that “[t]his provision is consistent with Michigan law” and then cites Tobey. In People v Daughenbaugh, the Court of Appeals concluded that “[t]he court rule is a codification of the Supreme Court’s earlier decision in [Tobey].”[10] The majority offers nothing to contradict this persuasive authority other than its unsupported assertion that Tobey is somehow inconsistent with the language of the court rule.[11] As noted earlier, the relevant language from Tobey is virtually identical to the language of MCR 6.120 and is in no way inconsistent.
II. APPLICATION OF THE STANDARD FOR JOINDER AND SEVERANCE
Given that Tobey and MCR 6.120 are consistent with one another, they provide a uniform standard for evaluating when joinder or severance of criminal charges is appropriate. The majority correctly notes that, in deciding whether severance is required, the threshold ques *257 tion must be whether the charged offenses were “related.” At the time of defendant’s trial, MCR 6.120 defined a “related” offense as either “the same conduct” or “a series of connected acts or acts constituting part of a single scheme or plan.”[12]
The lower courts both concluded that the offenses in this case were “related” under the “acts constituting part of a single scheme or plan” provision of MCR 6.120. The trial court ruled that the offenses were part of a single scheme or plan to commit “drug trafficking.” The Court of Appeals concluded that the offenses were part of a single scheme or plan “to earn money by selling cocaine.”[13]
The majority seemingly accepts the trial court’s interpretation of what may comprise a single scheme or plan, while rejecting the Court of Appeals’ interpretation of the provision as “too broad[].”[14] Yet the majority does not adopt the trial court’s language that defendant had a single scheme or plan to engage in “drug trafficking.” Instead, it concludes, similarly, that the offenses were related because defendant had a single scheme or plan “to package cocaine for distribution.”[15]
*258 In doing so, the majority performs a semantic sleight of hand. It first observes that “direct evidence indicated that [defendant] was engaging in the same particular conduct on those dates.”[16] Thus, it purports to agree with the lower courts that defendant’s conduct constituted a single scheme or plan.
However, the majority actually places what it considers the “same particular conduct” under the guise of the “single scheme or plan” provision of MCR 6.120.[17] *259 As will be discussed later, there is no basis for the majority’s conclusions that defendant’s offenses were “related.” It was not the same conduct or part of a single scheme or plan. Thus, none of the majority’s analysis is tenable under the court rule or Tobey.
A. THE FEDERAL RULES AND CASELAW INTERPRETING THEM
First, the provisions of the corresponding federal rules of criminal procedure, on which the majority relies heavily to support its holding, differ significantly from MCR 6.120. FR Crim P 8(a), which loosely tracks the definition of “related” offenses in MCR 6.120, defines such offenses more broadly than our court rule.[18]
In addition, FR Crim P 14(a), which governs severance of unrelated offenses, is discretionary, not mandatory like MCR 6.120(B). The federal rule also authorizes the court to sever offenses only when joinder prejudices the defendant. Again, MCR 6.120 is inapposite because it requires a court to sever all unrelated offenses upon a timely motion by the defendant, without requiring a defendant to show prejudice.
Second, caselaw interpreting the federal rule does not support the lower courts’ interpretation of what types of conduct can be considered a “single scheme or plan.” For example, in United States v Saadey,[19] on which the majority relies, the defendant was charged *260 with, among other offenses, conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO).[20]
The defendant was an investigator employed by the county prosecutor. In 1994 and 1995, he participated in a case-fixing conspiracy. He argued that the counts charging him with filing false tax returns and credit applications had been improperly joined. The Sixth Circuit Court of Appeals disagreed, concluding that joinder had been proper because all the charges filed against him stemmed from conduct that was part of his “common scheme to defraud.”[21]
Another case that the majority relies on, United States v Graham,[22] provides an even more compelling illustration of the connection necessary to establish a common scheme or plan. In Graham, the court upheld joinder of numerous drug and firearm charges against the defendant. However, the court based its holding on the motive underlying the defendant’s perpetration of each offense, which was encapsulated in a charge of conspiracy to commit offenses against the United States.
The defendant in Graham was a member of a local militia organization that planned to attack government targets. He also grew and sold marijuana, the proceeds of which he used to purchase weapons for his militia activity. Testimony at the defendant’s trial established that each of the charged offenses was directly related to the larger conspiracy and underlying motive for the offenses: defendant’s distrust of government and participation in the militia organization.
*261 The majority also relies on United States v Fortenberry.[23] There, the defendant was convicted of conspiracy to commit arson, possession of an unregistered firearm, and transportation of an undeclared firearm on a commercial airliner. The Fifth Circuit Court of Appeals upheld joinder of the offenses because they involved a common plan to take revenge on persons involved in defendant’s divorce and custody battle.
B. REQUIREMENTS FOR ESTABLISHING A SINGLE/COMMON SCHEME OR PLAN
The underlying premise throughout these cases is that a simple string of similar offenses, in and of itself, is not sufficient to establish a single common scheme or plan. Rather, the cases cited by the majority all involve situations in which each joined offense was committed with a particular motive or goal underlying the defendant’s conduct.[24] That common motive is what established the common scheme or plan and made joinder appropriate.[25]
*262 Hence, each of these cases involves situations in which the joined offenses were either planned in advance of their commission or committed to further the defendant’s unified goal. This interpretation is what distinguishes acts committed as part of a “single scheme or plan” from acts that are of “the same or similar character.”[26] That these two distinct provisions *263 are not intended to capture the same connection between offenses is evidenced by the fact that the rules in many jurisdictions include both.[27]
The commentary to the revised American Bar Association’s Standards for Criminal Justice supports this interpretation. It states:
[Common plan] offenses involve neither common conduct nor interrelated proof. Instead, the relationship among offenses (which can he physically and temporally *264 remote) is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses. A typical example of common plan offenses is a series of separate offenses that are committed pursuant to a conspiracy among two or more defendants. Common plan offenses may also be committed by a defendant acting alone who commits two or more offenses in order to achieve a unified goal.[28]
By contrast, the commentary describing offenses of the same or similar character states, “Similar character offenses normally involve the repeated commission of the same offense[,] often with the same modus oper- and!”[29]
Michigan has not adopted the “same or similar character” language as part of MCR 6.120. The majority implicitly does so here by denying severance of offenses that are of the same or similar character under the misnomer of a single scheme or plan.
Contrary to the majority’s conclusion, defendant’s acts of “packaging cocaine for distribution” do not meet the threshold for establishing a single scheme or plan. Unlike in Fortenberry, defendant in this case did not commit both drug offenses as part of a plan to exact revenge. Unlike in Graham, defendant’s motive for committing these offenses did not stem from his participation in a militia organization based on an underlying distrust of government.
In this case, there is no evidence that defendant either planned his two drug offenses in advance of their *265 commission or that he had a unified goal for committing them. The intent to engage in “drug trafficking,” or “earn money by selling cocaine,” is the intent to engage in the conduct itself, not evidence of a unified goal motivating the commission of the offenses.[30] Labeling this conduct as a plan to “package cocaine for distribution” is nothing more than wordplay designed to evade this determination. Although the drug offenses in this case involve conduct of the “same or similar character,” this similarity is not included in the definition of “related” offenses in MCR 6.120. Thus, although join-der under the federal rule might be appropriate,[31] MCR 6.120 mandates severance upon the defendant’s timely motion to sever.
C. THE MAJORITY’S INTERPRETATION IS AN UNREASONABLY BROAD ONE
The majority’s analysis, taken to its logical conclusion, would eviscerate the mandatory severance provision in MCR 6.120 and give trial courts unfettered discretion to deny defendants’ motions to sever. Defendants would never be entitled to severance of any drug *266 offenses because such offenses could always be deemed “related.” Similarly, defendants charged with criminal sexual conduct offenses would never be entitled to severance; their conduct always could be deemed part of a scheme to molest victims for the defendants’ sexual gratification. Such a broad construction of the joinder rules has been appropriately criticized. For example, in State v Denton,[32] the Tennessee Supreme Court observed that “[t]he argument that sex crimes can be construed as part of a continuing plan or conspiracy merely by the fact that they are committed for sexual gratification has previously been rejected.”
Thus, under the majority’s analysis, severance of the charged offenses would be unnecessary regardless how far apart in time and space the offenses occurred or the underlying motive for them. Such outcomes arguably would be appropriate if MCR 6.120 did not require severance when the offenses are of the “same or similar character.” The federal rule does not require it. As noted previously, however, our rule omits such language from its definition of “related” offenses.
Under the appropriate interpretation of MCR 6.120, defendant’s actions in this case were insufficiently linked to be treated as “related” and part of a “single scheme or plan.” The Tobey Court rejected the argument that the defendant had a single scheme “to make continuous sales of drugs,” because the sales were not multiple acts aimed at achieving the same goal. Presumably the defendant in Tobey was just as interested in “earnfing] money” from selling drugs as was defendant in this case. However, Tobey expressly rejected finding a single scheme or plan under similar circum *267 stances. Given that Tobey and MCR 6.120 are reconcilable, there is no basis for the majority to abandon this key holding from Tobey.
Finally, I note that other states with more expansive joinder and severance rules are typically far more protective of a defendant’s rights in this context than the federal rule. These states also grant defendants a mandatory right to severance of multiple offenses under certain circumstances.[33] My conclusion in this case is consistent with the broad interpretation of the right to severance that courts in jurisdictions with similarly worded rules have adopted. Moreover, such an interpretation of MCR 6.120 is entirely in accord with the language of the rule and the staff comment stating that the rule is “consistent” with Tobey.
III. HARMLESS ERROR
Finally, having concluded that defendant was entitled to mandatory severance of the charges against him, I also conclude that the failure to sever the charges was not harmless error.[34] MCL 769.26 states that a preserved nonconstitutional error is not grounds for reversal unless it affirmatively appears more probable than not that the error was outcome determinative.[35] MCR 2.613(A) provides that an error is not grounds for *268 disturbing a judgment unless refusal to do so appears inconsistent with substantial justice. The statute and the court rule are consistent with one other and simply reflect “different articulations of the same idea.”[36]
The majority concludes that, even if the denial of defendant’s motion to sever in this case were erroneous, it would be harmless because the error was not outcome determinative. It rests this conclusion on two bases. First, it concludes that the evidence of each charged offense could have been introduced at the other trial under MRE 404(b). Second, it observes that the United States Supreme Court has held that improper joinder, by itself, does not violate the United States Constitution.[37]
I believe that the trial court’s failure to sever the offenses in this case cannot be deemed harmless. MCR 6.120 provides an unqualified, mandatory right to severance for unrelated offenses.[38] In cases where an unequivocal right has been violated, as here, the error cannot be dismissed as harmless. Deprivation of that right inevitably results in substantial prejudice.[39]
*269 The majority’s conclusion that any error was harmless because evidence of one offense would have been admissible in the trial for the other offenses takes too much for granted. To succeed, this argument depends on the existence of the very “single scheme or plan” that would establish that the offenses were “related” and make severance unnecessary. Only once such a scheme has been shown would evidence of other offenses be admissible under MRE 404(b).[40]
Moreover, common sense dictates that an error cannot be harmless when a jury convicts a defendant of an offense that it should not have been allowed to consider. In People v Martin,[41] a majority of this Court held that a trial court’s jury instruction that erroneously allowed the jury to consider a lesser included offense was not harmless. Martin is analogous here because, in both cases, the jury convicted the defendant of charges it should never have been allowed to consider. The enor *270 mity of the prejudice to a defendant in such circumstances is clear, and this Court recognized it in Martin.
IV CONCLUSION
I dissent from the majority’s conclusion that MCR 6.120 superseded People v Tobey and that severance of the charged offenses in this case was not required under the rule. I also believe that the error cannot be considered harmless under MCL 769.26 and MCR 2.613(A). Therefore, I would reverse the Court of Appeals judgment and remand the case to the trial court for further proceedings.
CAVANAGH and HATHAWAY, JJ., concurred with KELLY, C.J.

 People v Tobey, 401 Mich 141; 257 NW2d 537 (1977).

 The majority evades this failure to compare the relevant language by comparing MCR 6.120(B)(2) and the defendant’s conduct in Tobey. Ante at 238 and 238-239 n 15. This is not the same as comparing the standards from the two cases. Moreover, it is immensely unhelpful to the majority’s argument that “the unambiguous language of MCR 6.120 does not require that a reviewing court consider the factors that the Tobey Court apparently found dispositive[J” Ante at 238 n 14. MCR 6.120 does not have any “factors” or describe any factual circumstances to which it does or does not apply. Therefore, the fact that MCR 6.120 does not require a reviewing court to consider “whether the undercover agent had always initiated the drug sales” is irrelevant.
Despite its failure to compare the language of Tobey with MCR 6.120, the majority confidently asserts that “the Tobey Court took a much narrower view of the circumstances in which joinder may be appropriate,” ante at 238, and that “the differences between Tobey and MCR 6.120 cannot be reconciled without undermining the plain language of the rule,” id. It reaches these conclusions without ever comparing the pertinent language of Tobey and MCR 6.120.

 The majority observed that Tobey did not use the terms “related” or “unrelated” to modify “offenses.” Ante at 242. We note that the joinder and severance standards from Tobey and MCR 6.120 are mutually consistent, and that is the fact more worthy of observation. See Part 1(A), Part 1(B), and note 7 of this opinion.

 The majority addresses Tobey’s citation of People v Johns, 336 Mich 617; 59 NW2d 20 (1953), Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), and the American Bar Association (ABA) Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968).

 Contrary to the majority’s implication, Tobey did not “mandate the existence of temporal proximity between several offenses.” Ante at 241. Rather, Tobey simply stated that, when a defendant commits separate offenses at different times, joinder of the separate offenses for trial is permitted only under certain circumstances. When MCR 6.120 was enacted, it defined those circumstances as “related” offenses, using language virtually identical to Tobey’s definition.
The majority opines that this claim does not comport with the Tobey Court’s discussion of Johns. Ante at 238-239 n 16. This argument is misguided because the Tobey Court concluded that Johns involved “a series of connected acts,” not a single scheme or plan. Tobey, supra at 162. In fact, Tobey said exactly the opposite in the context of offenses committed as part of a single scheme. Tobey, supra at 162 n 16 (“joinder is allowed for offenses which are part of a single scheme, even if considerable time passes between them.”) (emphasis added).
The majority similarly rejects as “unpersuasive” Tobey’s conclusion that “each sale is separate conduct, a separate act and transaction, and ... a separate and distinct criminal offense” because it relied on Blockburger. Ante at 241. It contends that Tobey erred because joinder and double jeopardy are distinct concepts, joinder being a nonconsti-tutional concept and double jeopardy being a constitutional protection. Id., quoting People v Nutt, 469 Mich 566, 692 n 28; 677 NW2d 1 (2004). Despite the majority’s isolated quotation from Nutt, nothing in Nutt undermines Tobey’s holding. Nutt defined “same offense” using the “same elements” test from Blockburger. In doing so, Nutt rejected the broader “same transaction” test for defining what constitutes the same offense, overruling People v White, 390 Mich 245; 212 NW2d 222 (1973). The majority offers no explanation for why this narrow definition of the “same offense” for double jeopardy purposes should be defined more broadly in the joinder and severance context. I am not persuaded that a defendant’s conduct should be considered “the same conduct” for joinder purposes when it simultaneously constitutes separate and distinct criminal offenses for double jeopardy purposes.

 Tobey, supra at 153 (citations omitted; emphasis added).

 I note that the standards need not be “identical” to be consistent with one another. Nevertheless, an illustration of the very minor differences between the two standards seems appropriate. These differences are inconsequential, as can be seen below:
Tobey: “based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.”
MCR 6.120(B): “based on the same conduct, or a series of connected acts or acts constituting part of a single scheme or plan.”

 Therefore, contrary to the contention of the majority, the fact that MCR 6.120 omits any reference to conduct of the “same or similar *255 character” in its definition of related offenses supports my position. The Michigan rule’s definition of related offenses is significantly narrower than that of the federal rule.

 Both Tobey and the court rule require that offenses must either not be joined or must he severed using virtually identical language to define “related” offenses. Tobey does not allow unrelated offenses to be joined in the first place. MCR 6.120 simply rephrases the negative joinder rule from Tobey as an affirmative right to severance, allowing unrelated offenses to be joined, but making severance mandatory if the defendant objects. Whether the charges are joined and then severed, or never joined in the first place, is irrelevant here. Defendant made a timely motion for severance, which is all that MCR 6.120 requires for mandatory severance of unrelated offenses.
The rewriting of the joinder and severance provisions to create an affirmative right to severance of unrelated offenses is significant for another reason. That an affirmative right to severance exists for defendants charged with unrelated offenses is significant when analyzing whether the erroneous denial of a motion to sever constitutes harmless error. See section on harmless error, infra.
*256 The majority acknowledges that “some differences” exist between MCR 6.120 and the analogous federal rules, ante at 244 n 27. But it does not explain why its analysis is plausible given that the differences between MCR 6.120 and the federal rules are far more substantive than the differences between MCR 6.120 and Tobey.

 People v Daughenbaugh, 193 Mich App 606,609; 484 NW2d 690, mod in part 441 Mich 867 (1992).

 The majority also objects to my reference to this dictum from Daughenbaugh as “persuasive authority.” Ante at 239 n 16. However, it offers no persuasive argument to warrant rejecting the staff comment and this language from Daughenbaugh. My analysis of Tobey and MCR 6.120 leads to the conclusion that the two provide consistent standards for joinder and severance. Since the staff comment and Daughenbaugh are also consistent with this conclusion, they are entitled to some weight in the analysis.

 MCR 6.120(B)(l)-(2). As the majority observes, although MCR 6.120 was amended effective January 1, 2006, this case was decided under the prior version of the rule and must be analyzed accordingly. The 2006 amendment did not significantly change the language defining “related” offenses.

 People v Williams, unpublished opinion per curiam of the Court of Appeals, issued October 25, 2007 (Docket No. 266807), at 2.

 Ante at 235 n 10.

 Ante at 235. The majority determines that the charged offenses were “plainly ‘related’ ” as part of an overall scheme or plan and therefore were properly joined. Ante at 234. Yet it makes this determination in spite of several contradictory conclusions. First, it rejects both the trial court’s and the Court of Appeals’ bases for finding a “single scheme or plan.” See ante at 235. Second, it concludes that the Court of Appeals construed the single “scheme or plan” language too broadly in finding an ongoing *258 scheme to “ ‘earn money’ through some criminal enterprise.” Ante at 235 n 10. Finally, despite these contradictions, it chastises the dissent for not “support[ing] its underlying assumption that the trial court abused its discretion” in finding that the offenses were “related.” Ante at 234 n 6. It appears that the majority itself believes that the trial court erred, because it does not adopt the trial court’s finding of a single scheme to engage in “drug trafficking.” However, that presents no barrier to it. It simply invents its own basis for holding that the offenses are “related.”

 Ante at 234-235 (emphasis added).

 This conclusion simply reflects the majority’s disagreement with how the Tobey Court defined “the same conduct or act.” In effect, the majority uses its conclusion that defendant’s conduct was part of an ongoing scheme “to package cocaine for distribution” to argue that the same conduct is involved in both offenses. This circular reasoning does nothing to advance the majority’s argument, because it presupposes the very conclusion it is attempting to prove.
However, joinder of the charged offenses against defendant in this case was premised on the “single scheme or plan” part of MCR 6.120. Defendant’s conduct was clearly not “the same conduct or act.”
It was undisputed in the lower courts that defendant’s crimes did not involve either “the same conduct” or “a series of acts connected together.” The majority determines that an ongoing scheme or plan to “earn money by selling cocaine” is insufficient to deny severance under MCR 6.120. It also determines that an ongoing scheme or plan to “package cocaine for distribution” suffices to deny severance. I find this to be an arbitrary distinction. Moreover, I disagree with the majority that the record contains “myriad evidence” showing that defendant was engaged in an ongoing scheme to package cocaine for distribution. Ante at 235 n 10. Nothing in the record supports or even suggests that defendant’s two arrests were anything more than two discrete occurrences of packaging illegal drugs. Separate, unrelated events are not “ongoing *259 acts.” There is no evidence of an underlying single purpose motivating defendant’s actions in each offense, aside from the extraordinarily broad one used by the lower courts and the majority.

 FR Crim P 8(a) allows joinder when the offenses charged “are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.”

 United States v Saadey, 393 F3d 669 (CA 6, 2005).

 18 USC 1961 et seq.

 Saadey, supra at 678.

 United States v Graham, 275 F3d 490 (CA 6, 2001).

 United States v Fortenberry, 914 F2d 671 (CA 5, 1990).

 In fact, in most of the cases the majority cites, the defendant was charged with conspiracy to commit a crime in addition to the joined offenses. The courts in those cases typically determined that the other charged offenses were properly joined because the defendant committed them in order to accomplish the objectives of the underlying conspiracy.

 Justice Corrigan’s opinion cites four cases from other states that it claims support its analysis. It then quotes language from two of the cases that support the conclusion that temporal proximity between offenses is not required for them to he properly joined. See ante at 249, quoting Lessard v State, 168 P3d 698, 704 (Wy, 2007); State v Willis, 181 Vt 170, 181; 915 A2d 208 (2006). As stated in note 5 of this opinion, I agree that temporal proximity between offenses is not required to establish that offenses are “related” as part of a single scheme or plan. These cases therefore fail to advance the majority’s argument.
Moreover, the majority’s broad definition of “single scheme or plan” is inconsistent with the language and purpose of the court rule. Other *262 jurisdictions with similar court rules have correctly rejected such interpretations. See State v Denton, 149 SW3d 1, 15 (Tenn, 2004) (“A larger plan or conspiracy in this context contemplates crimes committed in furtherance of a plan that has a readily distinguishable goal, not simply a string of similar offenses”). I acknowledge that Tennessee’s severance rule differs from Michigan’s. Nevertheless, contrary to the view of Justice Corrigan’s opinion, Denton is relevant here because it interpreted the common scheme or plan clause, not the evidentiary admissibility question. Thus, the differences between the rules were not relevant to this portion of Denton’s analysis.
In fact, many courts consider a finding of a common motive or goal as a precondition for establishing a single or common scheme or plan under the joinder and severance rules. State v McCrary, 621 SW2d 266, 271 (Mo, 1981) (“We find that the essential test in determining whether a common scheme or plan exists, in a case involving a single defendant acting alone, is the requirement that all the offenses charged must be ‘products of a single or continuing motive.’ ”) (citation and emphasis deleted); State v Oetken, 613 NW2d 679, 688 (Iowa, 2000). Justice Corrigan’s opinion correctly notes that McCrary and Oetken upheld joinder in those cases. Nevertheless, they do support my conclusion that finding the existence of a common or single scheme or plan requires more than the fact that the offenses were similar in nature. For example, in McCrary, the defendant’s broader goal in committing each offense was his “plan of harassment and revenge aimed at the Penermon family.” Id. at 272.

 Authority from other jurisdictions discussing the proper interpretation of a common or single scheme or plan, as opposed to conduct of the same or similar character, supports this interpretation. Compare United States v Jamara, 474 F3d 565, 574 (CA 9, 2007) (“[Situations where we have determined that a ‘common scheme or plan’ exists. .. typically involve a concrete connection between the offenses that goes beyond mere thematic similarity.”); with McLeod v State, 581 So 2d 1144 (Ala Crim App, 1990) (finding no error in the joinder of four counts of unlawful distribution of cocaine because all four offenses were clearly of the same character); United States v Coleman, 22 F3d 126, 133-134 (CA *263 7, 1994), abrogated on other grounds as recognized by Riley v Commonwealth, 120 SW3d 622 (Ky, 2003). Coleman interpreted the “same or similar character” language of FR Crim P 8(a) to mean that if offenses are of a like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied. The Court used an example that is instructive here: two armored car robberies committed months apart are offenses of the same or similar character; possessing five kilograms of cocaine and defrauding a bank, even if they occur on the same day, are not. The Court ultimately concluded that “joinder under Rule 8(a) was appropriate because Coleman was charged with four counts of possession of a firearm, identical 922(g)(1) offenses which could only vary in time and location but not in their essential elements.” Coleman, supra at 134.

 That the court rules in some jurisdictions contain both provisions certainly suggests that they cover different types of connections between offenses. So does the commentary to the ABA standards. The majority apparently concedes that the offenses in this case were of the same or similar character. Ante at 235 (“The charges stemming from both arrests were not ‘related’ simply because they were ‘of the same or similar character.’ ”) (emphasis added). Given that the charges stemming from the two arrests were for virtually the same offenses, it is difficult to see how one could not come to this conclusion. It is on this basis that I assert that the majority has read the “same or similar character” language into MCR 6.120. Ante at 245.
Nevertheless, the majority argues that the offenses in this case were not “related” for this reason. I agree that under MCR 6.120 and the ABA standards, same or similar character offenses are not “related” offenses. But this assertion does nothing to prove the majority’s underlying point — that the offenses were part of a single scheme or plan. I fail to see how this pronouncement, which again presupposes its conclusion is correct, advances the majority’s argument.

 2 ABA Standards for Criminal Justice, Commentary to Standard 13-1.2 (2d ed 1980).

 Id.

 This conclusion is supported by the Arkansas Supreme Court’s decision in Bunn v State, 320 Ark 516; 898 SW2d 450 (1995). There, the court reversed a defendant’s convictions of three counts of delivery of cocaine. The reversal resulted from the trial court’s erroneous denial of the defendant’s motion to sever the charged offenses. The Arkansas Supreme Court held that no single scheme or plan existed and noted that “[t]he purpose of [Arkansas’s severance rule] is to give effect to the principle that the State cannot bolster its case against the accused by proving that he has committed other similar offenses in the past.... The record is void of any evidence that the offense charged in Count III was planned in advance or as a part of the offenses charged in Counts I and II.” Id. at 523 (citation and quotation marks omitted).

 Many commentators, however, have strongly criticized joinder of offenses based solely on the grounds that they are of the same or similar character. See, e.g., LaFave, Criminal Procedure (3d ed), §17.1(b), p 762.

 Denton, supra at 15.

 For example, Tenn R Crim P 14(b)(1) provides:
(1) Involving Permissive Joinder of Offenses. If two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.

 While I am not convinced that a harmless-error analysis is appropriate here, because I conclude that the error in this case was not harmless, I need not answer that question.

 People v Lukity, 460 Mich 484, 496-496; 596 NW2d 607 (1999).

 People v Robinson, 386 Mich 651, 662; 194 NW2d 709 (1972).

 Ante at 245, quoting United States v Lane, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986). The majority also observes that there is “ ‘no such thing as misjoinder of offenses in Michigan.’ ” Ante at 245 n 27, quoting 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 17:36. Again, while technically correct, this statement is irrelevant. MCR 6.120(A) is permissive. It allows joinder of any and all offenses. MCR 6.120(B), by contrast, is mandatory and requires that unrelated offenses be severed upon a timely motion to sever.

 “Neither Tobey nor the court rule sets forth any exception to a criminal defendant’s absolute right to severance of unrelated offenses. Both provide an absolute right of a criminal defendant to insist on separate trials.” Daughenbaugh, supra at 510.

 “[A defendant] has a right to be warned by the complaint and warrant of what he is accused, and ought not to be convicted of two different crimes, committed at different times, under one information, with the evidence of each confounded as a whole, and used indiscriminately to convict him of both. Such a proceeding violates *269 every principle of justice, and places him at the mercy of the prosecutor; and, as, in this case, evidence not competent to prove one of the offenses, but admissible as to the other, is used to establish both crimes. Such a trial must necessarily be an unfair and illegal one.” [Tobey, supra at 154, quoting People v Aikin, 66 Mich 460, 472; 33 NW 821 (1887).]

 The majority is correct that “other acts” evidence is admissible under MRE 404(b) for purposes other than to show a defendant’s common scheme or plan. However, the prosecutor argued in the trial court for joinder or, in the alternative, to introduce evidence of defendant’s other crimes at the separate trials, based on defendant’s common scheme. Defendant was entitled to mandatory severance of the offenses against him. Therefore, it is improper simply to assume that evidence of defendant’s other crimes would be admissible for another purpose under MRE 404(b), rendering any error in failing to sever the charges harmless. Finally, even if there were another basis for admitting the evidence under MRE 404(b), it might nevertheless not be admissible if the court concluded that its prejudicial effect outweighed its probative value. See MRE 403.

 People v Martin, 482 Mich 851 (2008).